**Darren LOUIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–91–00329–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 13, 1992.

Roland B. Moore, III, Houston, for appellant.

Ernest Davila, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and CANNON, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellant entered a plea of guilty to the felony offense of aggravated robbery. TEX.PENAL CODE ANN. § 29.03 (Vernon 1974). The court assessed punishment, enhanced under TEX.PENAL CODE ANN. § 12.42 (Vernon 1974), at 25 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The judgment of the trial court is affirmed.

About noon on December 8, 1990, appellant and his co-defendant entered a Food City grocery store in northwest Houston and walked into the courtesy booth armed with pistols. The two men held the store manager, who was the only one in the booth at the time, at gunpoint and demanded that he give them the money from the store safe. When he had done so, the men told the manager to lie down on the floor. They then fled the store with the money.

The manager immediately called the police and informed them that he had just been robbed by two young black men. He described the general appearance of the men and, based on a description given to him by one of his employees, reported that the men had driven away in a white Oldsmobile.

Through a police radio dispatch, an HPD officer on patrol nearby learned of the robbery and of the manager's description of

the men. The report stated that the robbers were seen driving northbound on Hollister Street in a white Oldsmobile. In response, the officer proceeded to Hollister and, upon arriving at the corner of Hollister and the Northwest Freeway, noticed three black men in a light tan colored Cadillac stopped at a red light. The car was in the northbound lane on Hollister, waiting to make a right turn onto the freeway. The officer testified that it was the only car on Hollister at the time and that the location was less than two miles from the site of the robbery. He followed the Cadillac for four or five minutes as it headed east on the freeway. As he followed, he radioed the dispatcher for any information that could possibly exclude the Cadillac and its occupants as suspects in the robbery. He received no new information. The officer then turned on the patrol car's overhead lights and pulled the Cadillac over on the shoulder of the freeway.

When both cars stopped, the officer got out of his patrol car and walked toward the Cadillac. Appellant exited from the driver's seat of the vehicle and met the officer halfway. The officer had begun questioning appellant when one of the suspects who had remained in the Cadillac slid over to the driver's seat and sped away. Another officer, who had just arrived at the scene, pursued. After placing appellant in the back seat of his patrol car, the first officer joined in the chase. They were joined by a third officer, and, after reaching speeds in excess of 100 miles per hour, the chase finally came to an end. Appellant's co-defendant exited from the driver's seat of the Cadillac. The two men were placed in the other two patrol cars, and all three suspects were taken back to Food City for identification. The money which had been taken from the store was found in the Cadillac.

The three men arrived at Food City in separate patrol cars less than an hour after the robbery had taken place. After they arrived, the store manager went to each car and without hesitation identified the two men who had perpetrated the robbery. The third man was subsequently released.

■ In his first point of error, appellant contends that the trial court erred in denying his motion to suppress evidence claiming the officer was not authorized to make the initial stop of the Cadillac. Because the trial court is the exclusive finder of the facts at a hearing on a motion to suppress, this court is not at liberty to disturb any finding which is supported by the evidence. *Green v. State*, 615 S.W.2d 700, 707 (Tex. Crim.App.1980); *Posey v. State*, 763 S.W.2d 872, 874 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Here, at the conclusion of the hearing on appellant's motion to suppress, the court made a specific finding that:

> ... the police officers had sufficient reasons to stop the automobile in the first instance to investigate the situation and that a search and eventual arrest of any of the defendants did not occur until after the fleeing episode....

■ Circumstances short of probable cause for arrest may justify a temporary detention for the purposes of investigation. Such an investigation is a lesser intrusion upon the personal security of the individual. *Armstrong v. State*, 550 S.W.2d 25, 30 (Tex.Crim.App.1977). Courts have held that an occupant of an automobile is just as subject to a brief detention or stop as is a pedestrian. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Hazel v. State*, 534 S.W.2d 698 (Tex.Crim. App.1976). In order to justify an investigative stop, an officer is required to possess specific, articulable facts, which, in light of his experience and general knowledge together with rational inferences from those facts, would reasonably warrant his intrusion on the appellant and the occupants of the vehicle he was driving when the officer stopped him. *Glass v. State*, 681 S.W.2d 599, 601 (Tex.Crim.App.1984). The circumstances must reasonably indicate that the particular person has either committed or is preparing to commit a crime. *Id.* Mere suspicion is not enough. *Hull v. State*, 613 S.W.2d 735, 739 (Tex.Crim.App.1981).

■ Appellant contends that the officer had no more to go on than a correct racial description, and that there was an incorrect

passenger count and an incorrect identification of the vehicle. He argues that this "vague description" could not have given the officer sufficient cause to stop the vehicle appellant was driving. To the contrary, the officer relied on a number of other factors. From the report, he learned that two black males had just robbed Food City and were seen leaving the area headed north on Hollister in a white Oldsmobile. Driving his patrol car in the direction of robbery, he saw three black males in a light tan colored Cadillac traveling north on Hollister. No other cars were on Hollister at the time, and the vehicle driven by appellant was less than a couple of miles from the site of the robbery. The officer testified that based on his experience he knew that descriptions given over the radio are not always completely accurate. For this reason, it was reasonable for the officer to infer that a late model Oldsmobile and Cadillac, both products of General Motors, could be confused, and additionally, that a white car could easily be confused with a light tan car. He could also infer that the reason for the discrepancy in the number of suspects and the number of passengers in the car was that the third passenger had waited outside the store to act as a getaway driver. Thus, the officer was justified in stopping the vehicle driven by appellant.

Appellant relies primarily on three cases in support of his contention that the initial stop was unwarranted. The facts in the present case, however, are distinguishable. In the first case, *Brown v. State*, 481 S.W.2d 106 (Tex.Crim.App.1972), a Dallas police officer detained appellant and three others riding in a car with appellant for questioning in connection with a supermarket robbery committed on the previous day. The officer had participated in the investigation of the robbery, but at the time of the stop he was merely conducting a routine patrol. His decision to detain the four men was based solely on his conclusion that three of the four "fit the general description" of the armed robbers. This description consisted only of a designation as to race and an approximation of their height and weight. There was no testimony as to what type of car the robbers might have used or as to whether they used a car at all. Here, the officer was given a general description of the robbers, the vehicle that they were driving, and the direction they were traveling when they fled the scene. Instead of seeing them on the next day, the officer came upon appellant and the other suspects only a couple of minutes after the robbery had been reported.

Appellant also cites *Faulk v. State*, 574 S.W.2d 764 (Tex.Crim.App.1978), in which police stopped the appellant in response to a radio broadcast describing a "young black male wearing a multicolored shirt" who had just committed an armed robbery of a 7–11 convenience store close in time and location to the place where the officer saw the appellant driving his car. In holding that no sufficient reason existed for stopping the appellant, the court noted that the officer had only one fact to connect the appellant to the robbery, namely that he was a young black male. The clerk on duty at the time of robbery testified that the last he saw of the robber was his departure on foot around the side of the store. She did not observe any vehicle. The present case is clearly distinguishable as the detaining officer had both a description of the robbers and of the vehicle they were driving.

The third case cited by appellant is *Glass v. State*, 681 S.W.2d 599 (Tex.Crim.App. 1984). In *Glass*, police received a tip from an anonymous caller that occupants of two automobiles, a brown over beige El Camino and a blue Fairlane, were shooting at each other at or near a specific intersection. Upon hearing the dispatch, police officers proceeded to the intersection but saw no unusual activity taking place. Nevertheless, they stationed themselves near the intersection, and after a few minutes observed an El Camino similar to the one described. The officers then stopped the vehicle for questioning. The court held the stop to be unlawful.

Two factors distinguish *Glass* from the present case. First, the court in *Glass* noted that the record did not show when the alleged incident had occurred or when the anonymous report was received. The

court held, "Without such proximity in time, it would not be reasonable to conclude, solely on the basis of the match of color and make of the car, that the car stopped was the car involved in the reported incident." *Id.* at 601. In the present case, the record reflects that after the robbery was committed, the store manager immediately called the police and that the officer noticed the suspects and their vehicle only a couple of minutes later.

Also in *Glass*, the court emphasized the fact the tip had come from an anonymous informant. In the present situation, the report of the robbery was given by the victim. When police broadcast information is supplied by a named private citizen, whose only contact with the police is a result of having witnessed a crime, the credibility and reliability of the information is inherent. *Esco v. State*, 668 S.W.2d 358, 360–61 (Tex.Crim.App.1982). Any concern for the credibility or reliability of the informant in the present case is unfounded.

Because the facts in the present case are distinguishable from the facts in *Brown*, *Faulk*, and *Glass*, the holdings in these cases are not determinative. There was sufficient evidence here for the trial court to find that the police officer was justified in making his initial stop of appellant. Appellant's first point of error is overruled.

In his second point of error, appellant contends that the procedure in which the store manager identified appellant and his co-defendant was improperly suggestive and thus a denial of due process. He argues that the manager was "primed to identify any two suspects presented to him," because the police had told the manager that the suspects had been involved in a high-speed chase and that money had been recovered from the car they were driving. A claimed violation of due process in the conduct of a confrontation depends upon the totality of the circumstances surrounding the confrontation. *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim.App.1982). In *Garza*, the court examined the necessity and propriety of a "one man showup." While recognizing that a certain degree of suggestiveness is inherent in any "on-the-scene confrontation," the court held that in many situations such a procedure is necessary. *Id.* The court then listed a number of factors to be considered in determining whether a confrontation was necessary. First, by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate. *Id.* Here, the three suspects were returned to Food City approximately one hour after the robbery had been reported. The trial court found that:

> the witness ... had some three to four minutes to view the perpetrators of the offense during the time of the offense in the well-lighted courtesy booth; ... one of the defendants was five to six feet from him during the process and the other as close as 12 to 18 inches; ... one stood over him, looked straight into his face during the commission of the offense, during some portion of the offense; ... he was face to face viewing the defendants other than the time his head was stuck in the safe;

Because the manager had such a clear view of the robbers, he could test his memory while it was still fresh. Second, the quick confirmation or denial of identification expedites the release of innocent suspects. *Id.* Here, the third suspect was released and not charged because he was identified by the manager as not being one of the robbers. Appellant contends that they should have been taken to the police station for a lineup rather than back to the store since the station was closer to the place where they were finally caught. This was not necessary. Third, if the suspects are innocent, the showup can exclude them, and the police would be able to release them and continue searching the area for the actual criminals before they could alter their looks or dispose of any evidence of the crime. *Id.* Also, any possible prejudice resulting from such a confrontation can be exposed through rigorous cross-examination of the witness. *Id.* Here, the record reflects that the store manager was subjected to cross-examination by both appellant's attorney and by counsel for the

co-defendant. Considering the totality of the circumstances of these factors, the line-up was not unnecessarily suggestive.

Even if appellant's identification was suggestive and unnecessary, it was sufficiently reliable to be admissible. Factors to be considered in assessing reliability are: (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witness' level of certainty, (5) the time between the crime and the confrontation. *Garza*, 633 S.W.2d at 513, *citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Here, the manager had a very clear view of appellant, he paid close attention to the robbers, he was accurate in his description, he did not hesitate in identifying the robbers, and the confrontation took place within an hour of the robbery. Thus, under the totality of the circumstances there was not a "substantial likelihood of irreparable mistaken identification." *See Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Appellant's second point of error is overruled.

In his third point of error, appellant contends that the trial court abused its discretion by denying his motion to sever. Absent evidence of prejudice to one defendant in a joint trial, or evidence that one of the defendants has a prior admissible conviction, a motion to sever is left to the discretion of the trial court. *Patterson v. State*, 783 S.W.2d 268, 270 (Tex.App.— Houston [14th Dist.] 1989, pet. ref'd). The denial of a motion to sever constitutes an abuse of discretion only when the movant satisfies the "heavy burden" of showing clear prejudice. *Rajski v. State*, 715 S.W.2d 832, 834 (Tex.App.—Houston [14th Dist.] 1986, no pet.).

In his motion to sever, appellant claimed that he and his co-defendant had conflicting and antagonistic defenses and that a joint-trial would therefore be prejudicial. In his brief before this court, he specifically complains of co-defendant's testimony that he and not appellant was driving the car when it was initially stopped by the police. Appellant claims that whoever was driving the car initially "might monopolize a claim of standing on the issue of improper search." This issue is irrelevant, since the car would have been searched incident to arrest and the evidence would have been properly seized regardless of who was the driver. This issue is also irrelevant with regard to appellant's and his co-defendant's involvement in the aggravated robbery. No matter who was driving, both would have been brought back to Food City and identified as the perpetrators of the robbery.

Appellant additionally contends that the motion to sever should have been granted so as not to violate his Fifth Amendment privilege not to testify against himself. At the hearing on the motion to sever, counsel for the co-defendant called appellant to the witness stand. When appellant invoked his privilege not to testify, the co-defendant's attorney made the following comments:

By way of a bill, I would state for the record that if Mr. Louis was allowed to testify, he would testify that [co-defendant] was not involved in the aggravated robbery, that [co-defendant] was not present during the aggravated robbery as the [store manager] testified there were but two individuals present at the scene of the robbery. . . .

We cannot, as the Court knows, legitimately call Darren Louis to the stand at his own trial which would force him to invoke the Fifth Amendment at his own trial. Knowing that we cannot violate his Fifth Amendment rights, the only remedy available is to allow Mr. Louis to have his trial first and allow [co-defendant] . . . to have Mr. Louis testify at his trial.

In this context, the Court of Criminal Appeals has stated that separate trials are required only when one co-defendant is entitled to comment on the silence of another *and* the other is entitled to be tried free of such comment—where it would be an error against one co-defendant to let the evidence in and an error against the other to keep it out. *Webb v. State*, 763 S.W.2d 773, 775 (Tex.Crim.App.1989). Here, evidence con-

cerning who was driving the car at the time of the initial stop was irrelevant to the issue of their culpability. Thus, appellant fails to show the court that the trial court abused its discretion in denying the motion to sever. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.