# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00508-CR

**Ronald Stokes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 2010366, HONORABLE JON N. WISSER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Ronald Stokes was convicted of robbery and sentenced to 20 years' imprisonment. *See* Tex. Pen. Code Ann. § 29.02(a)(2) (West 2003). On appeal, Stokes claims that the trial court erred in admitting an eyewitness identification and in failing to instruct the jury to determine whether the State's evidence was obtained as a result of an illegal detention, and if so, to disregard such evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West Supp. 2003). Finding no reversible error, we affirm the conviction.

### BACKGROUND

In May 2001, a young man entered a shoe store on Airport Boulevard in Austin and looked around as if shopping. After rejecting assistance from store manager Joel Morrow, the man approached the cash register with a pair of shoes. When Morrow attempted to ring the shoes up, the

register malfunctioned and would not open. At this point, the man ordered Morrow to fill the empty shoe box with cash from the register. As Morrow attempted to fix the register, he began speaking loudly, in order to get a fellow employee's attention. In response, the robber threatened to shoot Morrow if he did not lower his voice. The robber's hand was in his jacket at this point, so Morrow did not know whether he had a gun. Although the robber attempted to keep his head down during this encounter, Morrow noticed his very short hair and facial blemishes or ingrown hairs from shaving. As soon as the robber left the store, Morrow ran first to the window and then outside and "tried to remember what the car looked like and the license plate number."

As soon as the man drove off, Morrow called the police and gave a description of the man and the car. From Morrow's report, the police broadcast a description of the robber as a black male in his 20s, wearing a red coat, approximately six feet two inches tall, 180 pounds, driving a red Chevrolet Cavalier with license-plate number J51JC7.

Officer Dane Sherry was patrolling in the area when the description was broadcast. He immediately started driving down Airport Boulevard towards the store, looking for a car matching the radioed description. Officer Sherry had learned from the dispatcher that the reported license-plate number did not match any known plate. Officer Sherry saw a maroon Ford Taurus— which he described as a "shade of red"— with license-plate number J51JGF headed in the opposite direction. Suspicious, Officer Sherry made a U-turn, pulled up to the car,[1] and observed Stokes in the driver's seat. Officer Sherry saw that Stokes was a black male, at least six feet tall, and around

---

[1] Officer Sherry at times claimed to pull up behind Stokes, while at other times he claimed to pull up beside him. However, it is reasonable to reconcile his statements by concluding that he first pulled up beside Stokes, and then fell back and pulled in behind him.

180 pounds.[2] Stokes was not wearing a red jacket. Officer Sherry testified that he found it unusual and suspicious that Stokes would not make eye contact with him.

Officer Sherry followed Stokes for a short distance before several other police officers joined the procession. Officer Sherry then turned on his pursuit lights and siren, and Stokes accelerated. A high-speed chase ensued, and Stokes was finally apprehended and brought back to the shoe store for identification.

After apprehending Stokes, the police indicated to Morrow that they were bringing someone "back" to the store to be identified. Although Morrow could not identify Stokes while he was sitting in the police car, when Stokes stepped out of the car, Morrow identified him as the man who had robbed the store 30 to 45 minutes earlier. In court, Morrow identified a police photograph of Stokes as the robber, and Officer Sherry testified to Morrow's out-of-court identification of Stokes.

## DISCUSSION

### *Eyewitness Identification*

In his first issue, Stokes claims that the trial court erred in admitting Morrow's eyewitness identification. He claims that the identification violated his constitutional rights.[3]

---

[2] It was stipulated at trial that Stokes was 24 years old, six feet two inches tall, and weighed between 190 and 200 pounds.

[3] Stokes makes both federal and state constitution claims. Because Stokes does not provide separate authority or argument for his state constitutional claim, we consider only his federal constitutional claim. *See Balentine v. State*, 71 S.W.3d 763, 766 n.2 (Tex. Crim. App. 2002).

3

A pretrial identification procedure—such as the one-man show-up procedure that the police utilized in this case—may be so suggestive and conducive to mistaken identification that subsequent use of that identification at trial would deny the accused due process of law. *Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988); *Brown v. State*, 64 S.W.3d 94, 99 (Tex. App.—Austin 2001, no pet.). To render such an identification inadmissible, a defendant must prove by clear and convincing evidence both that (1) the out-of-court identification procedure was impermissibly suggestive, and (2) the impermissibly suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Brown*, 64 S.W.3d at 99. Each case must be considered on its own facts. *Id.*

Despite a suggestive pretrial procedure, if the overall circumstances reveal no substantial likelihood of misidentification, the identification will be deemed "reliable" and therefore admissible. *Webb*, 760 S.W.2d at 269; *see Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). Reliability is the "linchpin" in determining the admissibility of identification testimony. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). In assessing reliability under the totality of the circumstances, we weigh the following nonexclusive factors against the corrupting effect of a suggestive identification procedure: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the time between the crime and the confrontation. *Ibarra*, 11 S.W.3d at 195; *Webb*, 760 S.W.2d at 269. We view these five factors in the light most favorable to the trial court's ruling. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998); *Brown*, 64 S.W.3d at 99.

4

The factors, viewed in this light, should then be weighed *de novo* against "the corrupting effect" of the suggestive pretrial-identification procedure. *Loserth*, 963 S.W.2d at 773-74; *Brown*, 64 S.W.3d at 99.

Assuming without deciding that the out-of-court identification procedure—a show-up where the police indicate that they are bringing an individual back to the scene—was impermissibly suggestive, we find that under the circumstances of this case the procedure did not give rise to a substantial likelihood of irreparable misidentification.[4]

The first factor is the opportunity of the witness to view the criminal at the time of the crime. Morrow had an opportunity to view Stokes from across a counter, a distance of only a few feet. While it is not explicitly stated in the record how long Morrow observed Stokes, one can infer that he had adequate time to view Stokes during the crime. The evidence indicates that during the commission of the crime Morrow needed to fix the register's printer in order to get it to open; this extended the time of the crime and Morrow's viewing time.[5] Moreover, his attention to Stokes as a customer immediately prior to the crime provided additional opportunity to view him.

The second factor is the witness's degree of attention. Morrow is likely to have been attentive. Witnesses who are victims, rather than casual observers, are generally believed to have a greater degree of attention. *Brown*, 64 S.W.3d at 101. Morrow remembered many of Stokes's characteristics—including his weight, height, race, age, short hair, facial blemishes, light-colored

---

[4] Express findings of fact were not made by the court in this case; we therefore view the facts in a light favorable to the trial court's decision not to suppress the eyewitness identification. *See Loserth v. State*, 963 S.W.2d 770, 774 (Tex. Crim. App. 1998).

[5] Morrow testified that while at the counter Stokes's head was "always down"; however, the fact that Morrow could see facial blemishes reveals that he was able to see some of Stokes's face.

5

pants, and red jacket—revealing a high level of attention. Immediately after the crime, Morrow studied Stokes's car and license plate, suggesting that he would have also been attentive to the criminal's characteristics during the crime. These facts lead us to conclude that Morrow was attentive during the crime.

The third factor is the accuracy of the witness's prior description of the criminal. Morrow's description of Stokes was accurate. Morrow noticed several details which corresponded with Stokes. Morrow was correct about Stokes's height, race, and age. Moreover, Morrow claimed to see in Stokes's photograph the same hair and blemishes which he observed on the robber. Morrow also gave a fairly accurate description of the car that Stokes was found driving.

The fourth factor is the level of certainty demonstrated by the witness at the confrontation. Morrow had no difficulty identifying Stokes as the robber either in court with the photograph or at the show-up after Stokes was presented outside the police car. Morrow never wavered in his identifications.

Finally, the fifth factor is the length of time between the crime and the confrontation. 30 to 45 minutes is a very short period between the crime and the confrontation. The court of criminal appeals has found confrontations which occurred five months after the crime sufficient for reliable identification. *See Webb*, 760 S.W.2d at 273.

In *Garza v. State*, the court of criminal appeals upheld the admissibility of a similar identification procedure. 633 S.W.2d 508 (Tex. Crim. App. 1982). In *Garza*, a show-up was recognized to be reliable. There, as here, the witnesses were told that suspects were being brought "back" to the scene of the crime. *Id.* at 510. There, less than 30 minutes had passed between the

6

offense and the confrontation. *Id.* at 513. The witnesses could only give a general description of the criminals and could not describe their faces but were very certain of their identification at the show-up. *Id.* at 513.

Stokes also challenges the admissibility of the out-of-court identification itself, which was entered into evidence in the form of testimony by Officer Sherry and Morrow. The same law used for in-court identifications applies to out-of-court identifications. *See Gilstrap v. State*, 65 S.W.3d 322, 326-328 (Tex. App.—Waco 2001, pet. ref'd) (applying same standard of review and law for both in-court and out-of-court identifications). Since the in-court identification was sufficiently reliable and admissible, the out-of-court identification must be as well. We overrule Stokes's first issue.

### *Jury Instruction*

In his second issue Stokes claims that the trial court erred in denying his request that the jury be instructed to evaluate whether evidence was obtained by an illegal detention. The code of criminal procedure, article 38.23(a) states that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a).

7

An officer may conduct a brief investigative detention when he has a reasonable suspicion that an individual is involved in criminal activity. *Balentine*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific, articulable facts, which when taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* This is an objective standard; the subjective reason for the detention is irrelevant. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001).

In a case very similar to the present one, another Texas court of appeals found that a police officer had reasonable suspicion to temporarily detain a car. *Louis v. State*, 825 S.W.2d 752, 756 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). In *Louis*, a police broadcast described two black men driving down Hollister Street in a white Oldsmobile. *Id.* at 753-54. A police officer proceeded to Hollister where he saw a light-tan Cadillac containing three black men. *Id.* at 754. It was the only car on Hollister at the time. *Id.* The court found that the officer was justified in stopping the car based on the known facts and the officer's experience with discrepancies in such broadcast descriptions. *Id.* at 755.

In determining whether an article 38.23 jury instruction must be given, the only question is whether under the facts of a particular case an issue has been raised by the evidence so as to require a jury instruction. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982). Where no such issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury. *Id.* Unless there is a factual dispute about how the evidence was obtained, courts

8

are not required to give an article 38.23 instruction. *See Balentine*, 71 S.W.3d at 773 (Tex. Crim. App. 2002); *Stoutner v. State*, 36 S.W.3d 716, 720-21 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Estrada v. State*, 30 S.W.3d 599, 605 (Tex. App.—Austin 2000, pet. ref'd).

Here there is no factual dispute. Both Stokes and the State recognize that Stokes's license plate was dissimilar in two digits from the reported license plate. They both recognize that Stokes's car was a maroon Ford Taurus while Morrow had reported that the robber was driving a red Chevrolet Cavalier. The only dispute is whether, in light of the timing and location, there was sufficient similarity to provide reasonable suspicion to detain Stokes, and this is not a question for the jury. *Jordan v. State*, 562 S.W.2d 472, 472-74 (Tex. Crim. App. 1978); *Stoutner*, 36 S.W.3d at 720-21. As there is no factual dispute, an article 38.23 instruction was not required. We overrule Stokes's second issue.

## CONCLUSION

The identifications of Stokes were reliable and therefore admissible; the trial court did not err in refusing Stokes's request for a jury instruction. Accordingly, we affirm the judgment of conviction.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: June 19, 2003

Do Not Publish

9