Affirmed and Memorandum Opinion filed July 20, 2006








Affirmed and Memorandum Opinion filed July 20, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00438-CR

____________

 

MARSHALL EDWARD LEWIS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 985,565

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Marshall Edward Lewis, was convicted of
aggravated robbery in a second trial after the first jury was unable to reach a
verdict.  After finding appellant guilty, the jury assessed punishment at
twenty-five years= imprisonment in the Texas Department of
Criminal Justice, Institutional Division.  In two issues, appellant challenges
his conviction alleging (1) the trial court erred in allowing an in-court
identification, and (2) the evidence was factually insufficient to sustain his
conviction.  We affirm.








Factual and Procedural Background

On April 23, 2004,  appellant purchased a drink at Nick=s Shell gas
station from the cashier, Catrena Young. Young testified that appellant was
wearing a red shirt and a red wave cap.  Additionally, she testified that she
noticed a tattoo Aof lines@ underneath his
eyes. Appellant left the store after purchasing a drink. 

Appellant returned to the store approximately twenty
minutes later. Young testified that appellant acted nervously in that he kept
looking around the store.  Appellant brought another drink  to the counter and,
as Young opened the cash register, appellant pointed a gun at her and demanded
that she tender the money while not making a scene.  He then reached over the
counter and began pulling the money out himself.  Young testified that when she
saw the gun, she was afraid.  As appellant left the store, Young apprised her
co-worker, Alex Salekeen, of the robbery. 

Salekeen ran after appellant, demanding that he stop.  The
owner of the convenience store, Nick Boulos, picked up Salekeen in his car. 
Boulos and Salekeen continued to pursue  appellant in Boulos=s car as Young,
who remained at the convenience store, called the police. Boulos and Salekeen
followed appellant until he jumped a fence.  They then returned to the gas
station where they gave a description of appellant to Officer Johnston.  Boulos
and Salekeen told  police appellant was wearing gray shorts, white shoes, a red
shirt, and a wave cap. 

Officer Johnston and Officer Leeson saw a male matching the
physical description of appellant, although he was not wearing a red shirt or a
wave cap.  Appellant began to run as the officers approached him.  While
pursuing appellant, Officer Johnston saw the suspect reach into his waistband
and throw something black into the grass, which he surmised was a gun.  The gun
was subsequently retrieved during a canine search.  After discarding the gun,
appellant continued running until he was ultimately apprehended and taken back
to the convenience store, where he was identified by Young as the man who
robbed the store. 








At the convenience store, the police conducted a Ashow-up@ identification
whereby Young identified appellant as the man who robbed the store.  When Young
identified appellant, she was standing inside the convenience store.  Appellant
was outside of the store, approximately twenty feet away from Young, with no
other suspects.  After Young identified appellant, the police returned to the
police station where they searched appellant=s pockets and
found the same amount of cash on appellant as was taken from the convenience
store.[1]

The officers were unable to locate the red shirt or the
wave cap.  However, the search was limited because the officers decided not to
search the railroad yard, to which appellant had run in the pursuit. The
officers reasoned that, although there were no moving trains at the time the
search was conducted, the railroad yard posed a danger to the officers in that
the train conductors could not see the officers searching amongst the trains. 
Appellant was indicted for the felony offense of aggravated robbery.[2] 
Appellant went to trial twice on this indictment. The jury was unable to reach
a unanimous verdict in the first trial.  On April 21, 2005, he was retried. 
The jury convicted him and subsequently sentenced him to twenty-five years= confinement in
Institutional Division of the Texas Department of Criminal Justice. Appellant
timely filed notice of appeal.  Appellant challenges his conviction with two
issues: (1) the evidence was factually insufficient to sustain his conviction;
and (2) the trial court erred in allowing the in-court identification of the
defendant when the pre-trial identification was impermissibly suggestive.[3] 
We affirm.








Analysis

I.        The
Evidence is Factually Sufficient

A.      Standard
of Review

Factual sufficiency challenges require the reviewing court
to consider and balance all the evidence in a neutral manner.  See Zuniga v.
State, 144 S.W.3d 477, 482 (Tex. Crim. App. 2004); Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  In reviewing the evidence, an
appellate court will determine the evidence is factually insufficient if: (1)
the evidence supporting the verdict is too weak to support the finding of guilt
beyond a reasonable doubt; or (2) in the event that there is evidence both
supporting and contradicting the verdict, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Zuniga, 144
S.W.3d at 484.  An appellate court cannot, in light of deference given to the
jury, substitute its own conclusions for that of the jury.  See Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922
S.W.2d at 133.  AThe jury . . . is the exclusive judge of
the facts proved, and of the weight to be given to the testimony.@ Tex. Code Crim. Proc. art. 38.04.

B.      Application
of Law to Facts

Appellant challenges the factual sufficiency of the
evidence in his first issue. Specifically, appellant contends that material
evidenceCusable
fingerprints, the red shirt, and wave capCwas never found
and, therefore, the evidence presented was insufficient to render a guilty
finding.  Further, appellant contends that the inability of the witnesses to describe
fully appellant=s earrings or the tattoos on his face and
neck amounted to incredible identification.  Viewing the evidence in a neutral
light, the jury was rationally justified in its decision.








In terms of appellant=s first contentionCthe lack of
material evidence foundCthe State provided witnesses= explanations as
to why the red shirt and wave cap were never recovered.  The State=s witnesses
testified that the search for the red shirt and wave cap was limited because
the switching trains at the railroad yard, to which appellant had run in the
pursuit, posed a danger.  Additionally, the State=s  witnesses
reasoned that appellant disposed of the clothing in a railcar; therefore, the
red shirt and the wave cap could not be recovered. However, appellant was
wearing shoes and a shirt matching Young=s description. 
Additional evidence presented also provides ample support for the jury=s finding
regardless of whether police found the shirt or wave cap. 

A gun consistent with Young=s description was
later located in the area appellant was seen discarding something resembling a
gun.  Young also identified the gun at trial.  Therefore, the jury could have
determined the gun was tangible evidence linking appellant to the robbery. 
Also, appellant was carrying the amount of cash stolen from the convenience
store.  Although appellant gave an explanation for the moneyCthat he had been
selling drugs earlier that dayCthe jury could easily reject appellant=s version of
events.  Additionally, Young identified appellant as the robber.  Of course,
appellant also argues the identification was not credible.








In terms of identification, the lack of description
regarding appellant=s earrings and face and neck tattoos is,
again, a matter of credibility for the jury.  Ms. Young testified that she saw
appellant=s tattoos.  While she was not able to remember what
side of the face the tattoos were on, she was able to provide a description of
the tattoos.  Additionally, Ms. Young was able to identify appellant in the Ashow-up@ on the day of the
robbery and in the courtroom during the trial.  According to Young, her
identification was not based upon appellant=s identifying
tattoos, but rather his facial features.  Salekeen also positively identified
appellant during the  Ashow-up@ and in court as
the robber whom he saw fleeing the convenience store.  Finally, the jury viewed
videotape footage and still photographs of the robber during the trial such
that they could determine for themselves if appellant was indeed the person in
the video and photographs robbing the convenience store.  Given the cumulative
testimony of all the witnesses present during the robbery and the physical
evidence, the evidence was not so weak that the standard of proof could not be
met.  We must now determine if the contrary evidence was so strong that guilt
could not be proven beyond a reasonable doubt.  See Zuniga, 144
S.W.3d at 484. 

Appellant testified in his own defense.  He was the only
witness provided in his defense, and he offered no evidence other than his
testimony.  Appellant contends the reason he ran from police was because he was
on parole and in possession of marijuana.  Further, appellant testified that he
had a large amount of money in his pocket because, on the day he was arrested,
he had engaged in drug transactions.  In addition, appellant testified that the
gun recovered was not his and that, given it was found in overgrown grass, it
could have been there for some time.  Lastly, appellant testified that he was
not near the convenience store at the time of the robbery.  Certainly, if
believed, appellant was not guilty.  However, it is not for us to determine if
appellant or the State=s witnesses were more credible.

In deference  to the jury, its determination of witness
credibility prevails.  To each of appellant=s assertions, the
State provided witnesses to either refute appellant=s versions of
events or to provide additional explanations.  While it is true, as appellant
suggests, usable fingerprints or additional clothing linking appellant to the
robbery would be helpful, such an assertion does not make the evidence
insufficient.  Rather, appellant merely explains in what ways the State=s case may have
been made stronger.

Here, the State provided ample evidence to prove appellant
was the robber.  Even though appellant believes the State could have made its
case stronger with additional evidence, the State met its burden.  We
overrule appellant=s first issue.

II.       In-Court
Identification

A. Standard of Review and Appellant=s Argument








Appellant=s next issue pertains to Young=s identification
of him as the robber.  Appellant contends the trial court erred in allowing
Young to identify him in court because her identification was based on a
pretrial identification procedure that was impermissibly suggestive and because
the jury was not informed that Young had an opportunity to observe appellant at
the previous trial.  Specifically, he argues the police should not have
conducted a Ashow-up@ identification, in
which the police bring only one suspect and ask a witness if the suspect is the
person who committed the crime.  Further, appellant argues Young was able to so
resolutely identify appellant at the second trial because of her observations
at the first trial.  According to appellant, Young was equivocal in her
identification at the first trial and overcame the flaws in her testimony based
upon viewing appellant during that trial.  As a result, Young was able to give
a persuasive in-court identification at the second trial, causing appellant=s conviction. 
Appellant contends the jury should have been privy to the circumstances
surrounding Young=s identification, in addition to his argument
Young never should have identified appellant in court.

A
pretrial identification procedure may be so unnecessarily suggestive and
conducive to mistaken identification that to use that identification would deny
the accused due process of law.  Webb v. State, 760 S.W.2d 263, 269
(Tex. Crim. App. 1988) (citing Stovall v. Denno, 388 U.S. 293, 301B02 (1967)).  Yet, even if the
pretrial procedure is impermissibly suggestive, the subsequent identification
testimony will be deemed reliable if the totality of the circumstances reveals
no substantial likelihood of misidentification.  A[R]eliability [is] the linchpin in
determining the admissibility of identification testimony.@  Id. (citing Manson v.
Brathwaite, 432 U.S. 98, 113B14 (1977)).  

Thus, we
engage a two‑step analysis in determining whether the trial court
erroneously admitted in‑court identification testimony evaluating: (1)
whether the pretrial procedure was impermissibly suggestive; and (2) if so,
whether the suggestive pretrial procedure gave rise to a very substantial
likelihood of irreparable misidentification at trial.  See Delk v. State,
855 S.W.2d 700, 706 (Tex. Crim. App. 1993).  It is appellant=s burden to prove the in‑court
identification=s unreliability by proving both of these elements by clear and convincing
evidence.  See id.  If the indicia of reliability outweigh the influence
of an impermissibly suggestive pretrial identification, the identification
testimony is admissible. Id.  








When reviewing a trial court=s ruling on a
motion to suppress an in-court identification, we afford almost total deference
to the trial court=s determination of historical facts that
the record supports.  Loserth v. State, 963 S.W.2d 770, 772 (Tex. Crim.
App. 1998).  That is especially true when the trial court=s findings are
based upon an evaluation of witness credibility and demeanor.  Id.  We
afford the same amount of deference to mixed questions of law and fact when the
ultimate resolution of those questions turns on an evaluation of credibility
and demeanor.  Id.  All other determinations of mixed questionsCthose not falling
in the above categoryCwe review de novo.  Id.   We review this mixed question of
law and fact de novo.  See id. at 773.

B.      There was
no Error

  1.     Trial Court did not Err in Admitting the
Show-Up 

Identification

Appellant asks us to reverse the trial court=s ruling on his
motion to suppress.  In part, appellant contends the show-up identification was
impermissibly suggestive so as to render an in-court identification improper. 
The trial court at the first and second trial appears to have carried the
motions to suppress with the trial and ruled at the time of the in-court
identification.  The State argues the issue is waived due to an inadequate
record.  We disagree and address appellant=s arguments on the
merits.  








First, we must determine if the pretrial procedure was
impermissibly suggestive.   While a show-up identification has some degree of
suggestiveness, in many situations its use is necessary.  Garza v. State,
633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (op. on reh=g).  By viewing
the alleged criminal immediately after the commission of the offense, the
witness is allowed to test her recollection while her memory is still fresh and
accurate.  Id.  The quick confirmation or denial of identification also
expedites the release of innocent suspects, and enables police to release
innocent suspects and continue their search for the criminal while he is still
within the area and before the criminal can substantially alter his looks and
dispose of evidence of the crime.  Id.  Finally, any possible prejudice
resulting from such a confrontation can be exposed by rigorous
cross-examination of the witness.  Id. 

Here, the procedure was likely necessary.  Appellant was
arrested approximately twenty-five minutes after police were called; officers
returned with appellant and conducted a show-up identification.  Young
identified appellant while she was inside the store and appellant was standing
next to a patrol car.  Had Young told police that appellant was not the robber,
they could have released him and continued searching for the criminal while he
was still in the area.  As occurred below, appellant had already attempted to
alter his appearance and flee police.  However, Young was able to identify him
based upon his physical appearance and features, regardless of the fact that he
had shed some of the clothing he was wearing earlier.  See Louis v.
State, 825 S.W.2d 752, 756 (Tex. App.CHouston [14th
Dist.] 1992, pet. ref=d) (on-scene identification was not
impermissibly suggestive when confrontation occurred an hour after offense,
defendant was immediately identified, and any possible prejudice resulting from
the confrontation could have been exposed from the cross-examination of the
witnesses).  Regardless, as we explain below, there was not a substantial
likelihood of irreparable misidentification at trial because the jury was able
to view video and photographs depicting appellant committing the offense, and
Young was certain in her identification.

2.       Young was
not Equivocal at the First Trial








The remainder of appellant=s argument centers
on his contention that Young had difficulty identifying him at his first trialCcausing the
deadlocked juryCbut gave a persuasive identification at
the second trialCleading to appellant=s conviction. 
Appellant believes the jury needed to hear testimony regarding the two trials
and identifications.  See Garza v. State, 633 S.W.2d 508, 514 (Tex.
Crim. App. 1982) (op. on reh=g) (holding that because the jury had
before it all of the relevant information, it was able to determine the
credibility of the witnesses).  However, the record before us does not bear out
appellant=s theory.  Young=s testimony at
both trials was largely the same.  She identified appellant=s tattoos and his
physical appearance, and was certain of her identification.  Although Young was
not able to describe every one of appellant=s tattoos or his
earrings with precision, that goes to weight and credibility, not
admissibility.  The jury was able to observe appellant, hear testimony about
his actual tattoos and earrings, and compare that with Young=s testimony, which
was substantially similar to her prior testimony.  Finally, Young testified
that she identified appellant based upon his facial features, not his tattoos. 
Therefore, the tattoos do not play as strong a part in her identification as appellant
argues.  Young observed appellant for several minutes each time he entered the
convenience store and studied him closely, causing her identification at the Ashow-up@ identification
and both trials to be certain and unequivocal. 

Additionally, the record does not demonstrate any ruling
from the trial court refusing to allow appellant to cross-examine Young
regarding her prior testimony.  Appellant evidently was approaching that
subject during the second trial, but the trial court called the attorneys to
the bench and held an off-the-record bench discussion.  Following that
discussion, appellant simply asked Young if she had testified beforeCand she answered
she hadCand then moved to
other subjects.  If the trial court refused appellant an opportunity to present
Aall of the
relevant information,@ it is not borne out in our record. 
Without a record containing a discussion between the judge and the lawyers on
this issue, that the judge did not allow the jury to hear all relevant
information, the record does not bear out appellant=s claim.  

3.       No Harm
In Any Event








The jury heard ample testimony and viewed physical evidence
linking appellant to this robbery.  Appellant cannot demonstrate harm.  The
jury viewed photographs and video footage with the robber=s face,
uncovered.  The video and photographs depicted the robber wielding a gun and
taking cash from the register.  Additionally, appellant was apprehended 
carrying the same amount of money as was stolen from the convenience store.  A
gun that appellant discarded was recovered, which Young identified as the
weapon used during the robbery.  Finally, testimony from Salekeen also linked
appellant to the robbery.  This simply was not a case in which the in-court
identification was the sole piece of evidence.  Numerous other pieces of
evidence linked appellant to this robbery.  We overrule appellant=s second issue.

Conclusion

Having overruled both of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 20, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 

 

 









[1]   It is appellant=s
contention that Young was equivocal in properly identifying appellant in the
first trial and, as such, appellant objected to the Aone-on-one identification@ during the second trial, while referencing the ruling
of the trial court from the first trial. Although appellant was informed he
could designate the ruling as Apart of the
record@ in the second trial, he did not do so.  Therefore,
the record does not contain the statement of the facts from the suppression
hearing.  Appellant did include portions of transcript from the first trial on
the merits, which we will discuss below.





[2]   A person commits the offense of aggravated robbery
if he unlawfully appropriates property with the intent to deprive the owner of
the property without the owner=s effective
consent and with the intent to obtain and maintain control of the property, and
he uses or exhibits a deadly weapon.  See Tex. Penal Code ''
29.02, 29.03.





[3]  As we note in the opening paragraph, appellant
actually presented his issues in the reverse of this listing.  However, because
a holding that the evidence is factually insufficient would automatically
entitle appellant to a new trial, we consider that issue first.