**Affirmed and Memorandum Opinion filed October 27, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-14-00687-CR

---

### GERALD GERROD DARBY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1384358**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Gerald Darby of burglary of a habitation with the intent to commit theft. After finding two enhancement paragraphs true, the jury assessed punishment at sixty-two years' imprisonment. In three issues, appellant contends that: (1) permitting an in-court identification denied him due process because it was based on a suggestive pretrial procedure; (2) the evidence was insufficient to conclude that he committed the charged offense; and (3) the evidence was insufficient to find that the enhancement paragraph regarding a prior

felony conviction in Grayson County was true. We affirm.

## BACKGROUND

One April morning, around 9:00 A.M., complainant Alejandro Panjoj-Morales awoke to a loud noise in his apartment. From his bedroom doorway, Morales observed two men in his living room, standing near his laptop computer. Morales saw the profile of one man for about four to seven seconds, but he could not see the other intruder's face because the man was crouched down. Morales described the intruder he saw as an African-American male wearing a red shirt and a red cap. Morales went to wake his brother, but when he returned to the living room, the men and his laptop were gone.

Morales's neighbor also encountered two men that morning. She testified that she was talking on the phone when she heard a knock at the door. The neighbor looked out the peephole, but she did not recognize the man standing outside. This first man left after the neighbor told him the person he was looking for did not live there. A few moments later, the neighbor heard a loud "boom" and looked out the peephole again. She stated that she observed a second man running down the hallway of the apartment complex. According to the neighbor, this second man had darker skin than the first. The neighbor then called the apartment manager, who arrived soon after with two other employees. As she was standing outside describing the incident to them, she saw two African-American men leaving the parking lot. Although the neighbor stated that they had changed clothes, she confirmed that these were the same two men who had been at her door approximately fifteen minutes earlier. The neighbor observed that the darker of the two men was carrying a backpack.

The apartment manager called the police, and his two employees chased the men on foot. The employees flagged down a passing Houston police officer, who

2

then turned to follow the men. Ultimately, the police apprehended the two men but did not recover the backpack. After taking Morales's statement at the scene, the officer conducted a "show-up identification." The officer informed Morales that he had a person detained in the squad car and asked him to determine whether it was the person he observed in his apartment. Morales went out to the parking lot and confirmed that the suspect in the patrol car was the same individual who had broken into his home. This man was ultimately identified as appellant.[1]

Appellant was charged with burglary of a habitation with the intent to commit theft, a second degree felony. The State sought to enhance his punishment because of two prior felony convictions. At trial, Morales again identified appellant as one of the men who broke into his apartment. Two apartment employees also identified appellant as the man with the backpack that they had followed from the complex, and the officers identified him as the person they arrested near the scene that day. After hearing this testimony from the Morales, the neighbor, the apartment employees, and the officers, the jury found appellant guilty. The jury also found both enhancement paragraphs to be true and sentenced appellant to sixty-two years in prison.

### ISSUES AND ANALYSIS

Appellant raises three issues. First, he contends that the trial court erred in allowing Morales to identify him in court because police used a suggestive out-of-court procedure. Second, he argues that the evidence was insufficient to support his burglary conviction. Third, he claims that there was insufficient evidence to find that Enhancement Paragraph One was true. We address each of appellant's issues in turn.

---

[1] The neighbor did not participate in the identification at the scene and was not asked to identify appellant at trial.

## I.    In-Court Identification

In issue one, appellant argues that the trial court erred in admitting Morales's in-court identification of him as the burglar because it was based on an impermissibly suggestive show-up identification procedure at the scene, which thus gave rise to a substantial likelihood of misidentification at trial. The admissibility of an identification is a mixed question of law and fact that we review de novo. *See Brown v. State*, 29 S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citing *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 1998)). We conduct a two-step analysis in determining whether the trial court erroneously admitted in-court identification testimony by evaluating (1) whether the pretrial procedure was impermissibly suggestive and, (2) if so, whether the suggestive pretrial procedure gave rise to a very substantial likelihood of irreparable misidentification at trial. *See Delk v. State*, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). A claimed violation of due process in the conduct of an identification confrontation depends on the totality of the circumstances surrounding it. *Garza v. State*, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981) (op. on reh'g).

Appellant argues that the show-up identification was impermissibly suggestive because he was presented by himself to Morales and because the police did not use a photo array. However, we recently explained that although these show-up identifications might be somewhat suggestive, "their use is necessary in cases where time is of the essence in catching a suspect and an early identification is aided by the fresh memory of the victim." *Mendoza v. State*, 443 S.W.3d 360, 363 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Fite v. State*, 60 S.W.3d 314, 318 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) and *Santiago v. State*, 425 S.W.3d 437, 442 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

4

("The initial show-up procedure at the crime scene was not shown to be impermissibly suggestive, as such confrontations have been acknowledged as being necessary in many cases.")).

In *Garza*, the court explained the benefits of a show-up identification. First, by viewing the alleged perpetrator immediately after the commission of the offense, the witness is able to test his recollection while his memory is still fresh and accurate. *Garza*, 633 S.W.2d at 512; *Louis v. State*, 825 S.W.2d 752, 756 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). Second, quick confirmation or denial of identification expedites the release of innocent suspects. *Garza*, 633 S.W.2d at 512; *Louis*, 825 S.W.2d at 756. Third, a show up allows police to release any innocent suspects and continue their search for the perpetrator while he is still nearby and before he can significantly alter his appearance or dispose of evidence of the crime. *Garza*, 633 S.W.3d at 512; *Louis*, 825 S.W.2d at 756. Fourth, the court noted that any potential prejudice resulting from such an identification can be exposed by rigorous cross-examination of the witness. *Garza*, 633 S.W.3d at 512; *Louis*, 825 S.W.2d at 756.

All of these benefits apply to the circumstances of this case. First, Morales viewed the suspects less than an hour after the burglary, allowing him to test his memory while the incident was still fresh in his mind. Second, because Morales only identified appellant, the second suspect detained by police was quickly released. Third, police apprehended the suspects across the street from the scene of the crime soon after it occurred, and appellant's clothing matched Morales's description. Appellant argues the police should have employed a less-suggestive procedure, such as a photo array. However, if the police had waited until a photo array could be arranged, appellant could have had time to substantially change his appearance. Finally, the record shows that appellant's attorney cross-examined

5

Morales and both officers at trial. This gave defense counsel an opportunity to expose any possible prejudice resulting from the show-up identification.

The police also employed safeguards to make the identification process less suggestive. First, the officer testified that he put the two suspects in separate vehicles. Second, the officer stated that he admonished Morales in accordance with Houston Police Department procedure:

> I gave him the same admonishments that any HPD officer gives any suspect. We have somebody detained. We want you to come look at them . . . . [I]t could be the person. It could be not. We just need you to look at him. He could have changed his clothes. He could have changed his appearance. If you think it's him, let us know. If it's not, no big deal.

Appellant points out that although the officer testified that he showed Morales two suspects and gave the standard admonishments, Morales gave contradictory testimony. Morales stated that the officer only presented him with one suspect and that he did not remember being admonished. However, both of these facts go to the credibility of Morales's testimony, an issue within the sole province of the jury. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). It is the jury's responsibility to resolve conflicts in testimony, and the jury is free to believe one version of events over another. *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *see also Williams v. State*, No. 14-06-00132-CR, 2007 WL 2770744, at *4 (Tex. App.—Houston [14th Dist.] Sept. 25, 2007, no pet.) (mem. op., not designated for publication) (holding that contradictory testimony from officer and witness about whether witness viewed a lineup was an issue for jury to resolve).

Finally, we note that the trial court could have concluded that the in-court identification of appellant was not tainted by the show-up procedure because Morales testified at the pretrial hearing that his identification was "based on what [he] saw at the house." Even though Morales admitted that he only got a brief

glimpse of appellant's face, Morales stated: "his image stayed recorded with me from when he was standing in my apartment." Therefore, based on the totality of the circumstances, we hold the show-up identification as conducted in this case was not impermissibly suggestive.[2] As the Supreme Court has noted, the admission of evidence of a show-up identification, without more, does not violate due process concerns. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). We overrule appellant's first issue.

## II.    Evidence of the Charged Offense

In issue two, appellant contends that the evidence is insufficient to conclude he committed the burglary of Morales's apartment. A person commits burglary of a habitation if, without the consent of the owner, the person enters the habitation and commits or attempts to commit a felony, theft, or assault. *See* Tex. Penal Code § 30.02(a). Appellant does not dispute that a burglary occurred but denies that he was the perpetrator.

Appellant argues that the evidence is insufficient because "[t]here is no evidence supporting appellant's conviction other than [Morales's] identification," which was "tainted by the suggestive nature of the out of court identification." As previously explained, we have held that the show-up identification procedure was not impermissibly suggestive because of the safeguards employed by the officers in this case. Furthermore, Morales's testimony was not the only evidence of appellant's guilt presented to the jury. First, the neighbor's testimony placed

---

[2] Appellant contends we should also consider whether "under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." *See Neil v. Biggers*, 409 U.S. 188, 199 (1972). However, because we conclude that the show-up identification was *not* impermissibly suggestive, we need not address the likelihood of misidentification. *See Mendoza v. State*, 443 S.W.3d 360, 364 n.4 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Adams v. State*, 397 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

appellant at the scene of the burglary with a laptop, an item Morales claimed was stolen during the burglary.[3] Second, both of the apartment employees positively identified appellant at trial as the man they saw leaving the parking lot and both noted that appellant fled when the police car turned in his direction. Third, both officers testified that they arrested appellant across the street from the scene of the crime in a nearby apartment complex. Additionally, one officer stated that when asked about the location of the backpack, appellant responded: "[you] will never find [it]."[4] We hold that this evidence, along with Morales's identifications at the scene and at trial, is sufficient to support appellant's conviction for burglary of a habitation.

Even if Morales's testimony was the only evidence in this case, the testimony of a single eyewitness can be sufficient to support a conviction. *See Bowden*, 628 S.W.2d at 784; *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Bradley v. State*, 359 S.W.3d 912, 917 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The jury alone decides whether to believe eyewitness testimony and how to resolve any conflicts or inconsistencies in the evidence. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Looking at the evidence in the light most favorable to the verdict, and the rational inferences therefrom, a rational trier of fact could have found the essential elements of burglary of a habitation beyond a reasonable doubt. Consequently, we defer to the jury's assessment of Morales's credibility and overrule appellant's second issue.

---

[3] We note that although the neighbor did not identify appellant in court as the man carrying the backpack, the apartment employee testified that the neighbor pointed to appellant as he left the apartment complex with the backpack and identified him as the person who ran past her door earlier that morning.

[4] Two witnesses testified that appellant made this statement about the backpack: Mr. Rodas, an apartment employee, and the arresting officer. Appellant objected to Roda's testimony as hearsay, but did not object when the officer gave similar testimony.

## III. Evidence of Enhancement Paragraph One – Grayson County

In issue three, appellant claims that the evidence was not legally sufficient to support the jury's finding of true to Enhancement Paragraph One because the indictment stated he had been convicted in Grayson County, Texas, while the prior judgment stated he had been convicted in Fannin County, Texas. Appellant argues that this discrepancy is a material variance. The relevant enhancement paragraph in the indictment read as follows:

> [O]n MAY 1, 2009, in Cause Number 22468, in the 336th of GRAYSON County, Texas, the Defendant was convicted of the felony of ASSAULT ON A PUBLIC SERVANT.

The judgment introduced as proof of the prior felony showed that appellant was convicted in Fannin County, not Grayson County. However, in both documents the court number, cause number, date of judgment, and type of offense were the same.

In reviewing a claim of legal insufficiency based on a variance between the indictment and the evidence produced at trial, we first consider the materiality of the variance. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *see Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001); *Rogers v. State*, 200 S.W.3d 233, 236 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "A variance is material if it (1) deprived the defendant of sufficient notice of the charges against him such that he could not prepare an adequate defense, or (2) would subject him to the risk of being prosecuted twice for the same offense." *Rogers*, 200 S.W.3d at 236 (citing *Fuller*, 73 S.W.3d at 253; *Gollihar*, 46 S.W.3d at 257). The defendant bears the burden of demonstrating the materiality of a variance. *Id.* at 237 (citing *Santana v. State*, 59 S.W.3d 187, 194–95 (Tex. Crim. App. 2001)). At the same time, we consider the more lenient standard for alleging enhancement convictions, namely, that a prior conviction used for punishment

enhancement need not be alleged with the same particularity as must be used in charging the original offense. *See Freda v. State*, 704 S.W.2d 41, 42 (Tex. Crim. App. 1986); *Chavis v. State*, 177 S.W.3d 308, 312 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

In support of his contention that the variance in Enhancement Paragraph One is material, appellant cites *Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012). In that case, the charging instrument alleged that appellant injured the victim in a different manner than was proven at trial. In finding that the variance was immaterial, the Court stated: "[w]hat is essential about variances with respect to non-statutory allegations is that the variance should not be so great that the proof at trial shows an entirely different offense than what was alleged in the charging instrument." *Id.* at 295 (internal quotation omitted). The court then gave the following example of a variance that would not be acceptable:

> For example, in a murder prosecution, the victim's name need not be proved with exactness, but the State must prove that the victim alleged in the indictment is the same person as the victim proved at trial. If the State has alleged the murder of "Dangerous Dan" but has proved, instead, the murder of "Little Nell," then the State has proved a different murder than it has alleged, and an acquittal is required.

*Id.* Appellant cites this language and then claims that "[p]roof of the correct jurisdiction where an enhancement offense occurred is a material element. Failure to prove the correct county for an enhancement paragraph is a material variance . . . ." However, appellant provides no authority for this contention, and we find the court's hypothetical in *Johnson* inapplicable to the present case. Alleging that the defendant murdered an entirely different victim is not like charging that he committed the offense in another county. Here, the enhancement paragraph and the judgment both show the same cause number, the same offense, the same date of conviction, and the same correct number for the convicting court.

The only variance is the county of the prior offense.[5]

The purpose of the doctrine of variance is to ensure that the defendant was neither surprised nor prejudicially mislead by the variance. *See Freda*, 704 S.W.2d at 42–43. In this case, the discrepancy would not have prevented appellant from locating the record of the prior conviction upon which the State relied, nor was the inclusion of the proper county essential to constitute the offense of burglary of a habitation. As such, the variance was neither material nor fatal. *See id.* at 43 (variance not material when indictment alleged prior conviction for bank robbery but proof showed defendant was convicted for conspiracy to commit bank robbery); *Benton v. State*, 770 S.W.2d 946, 947–48 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd) (variance immaterial where indictment gave convicting court number but enhancement paragraph did not); *see also Bryant v. State*, No. 14-99-01373-CR, 2002 WL 27573, at *3 (Tex. App.—Houston [14th Dist.] Jan. 10, 2002, pet. ref'd) (not designated for publication) (variance not material where two digits in indictment cause number were inadvertently transposed in enhancement paragraph). Although appellant made a conclusory statement during punishment that he was "surprised" and "prejudiced" by the variance, he has failed to provide any explanation on appeal as to how he was harmed or impaired in preparing his defense. Merely stating he was surprised or prejudiced by the variance is insufficient. Therefore, we overrule appellant's third issue.

---

[5] In denying appellant's motion for a continuance due to the variance, the trial judge noted on the record that at the time of the offense alleged in Enhancement Paragraph One, the 336th District Court had jurisdiction over both Fannin and Grayson County. Therefore, he found the variance to be immaterial, citing *Benton v. State*, 770 S.W.2d 946, 947–48 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd).

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.


/s/  Ken Wise
    Justice


Panel consists of Justices Jamison, McCally, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).