George Lawrence McALLISTER,
Appellant,

v.

The STATE of Texas, Appellee.

No. 06–99–00085–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 3, 2000.

Decided Aug. 4, 2000.

Janet S. Morrow, Spring, for appellant.

Peyton Z. Peebles, III, Asst. Dist. Atty., Calvin A. Hartmann, Harris County Dist. Atty.'s Office, Houston, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

George Lawrence McAllister appeals his conviction for aggravated robbery. A jury found McAllister guilty, found an enhancement paragraph true, and assessed punishment of forty-five years' confinement and a $5,000 fine. On appeal, McAllister contends he received ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, McAllister must show (1) that his attorney's representation fell below a reasonable standard of effectiveness and (2) that the deficient performance was so serious that it prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996). To meet this burden, McAllister must prove by a preponderance of the evidence that his attorneys' representations fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for his attorneys' deficiencies, the result of the trial would have been different. *McFarland,* 928 S.W.2d at 500.

In ruling on an ineffective assistance of counsel claim, we consider the totality of the evidence before the jury. *Id.* Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id.*

Our review of counsel's representation is highly deferential; we indulge a strong presumption that their conduct fell within a wide range of reasonably effective representation. *Id.* The burden is on McAllister to overcome that presumption. *Id.* He must show specific acts or omissions that constitute ineffective assistance and affirmatively prove that those acts fell below the professional norm for reasonableness. *Id.*

We will make a full inquiry into counsel's strategies or tactics only if, from all appearances after trial, there is no plausible basis in strategy or tactics for their actions. *Ex parte Burns,* 601 S.W.2d 370, 372 (Tex.Crim.App.1980). We will not second-guess counsel's trial strategies, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). The fact that another attorney, including McAllister's attorney on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State,* 997 S.W.2d 695, 704 (Tex.App.-Texarkana 1999, no pet.).

After proving error, McAllister must affirmatively prove prejudice. *McFarland,* 928 S.W.2d at 500. He must prove that his trial attorneys' errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Id.* It is not

enough for McAllister to show that the errors had some conceivable effect on the outcome of the proceedings. *Id.* He must show that there is a reasonable probability that, but for his attorneys' errors, the jury would have had a reasonable doubt about his guilt. *Id.*

McAllister contends that his trial attorneys were ineffective because they neither moved to suppress, nor requested a jury instruction on (1) the lineup identification of McAllister, and (2) the fruit of the search of McAllister's house-a handgun that McAllister allegedly used during the robbery.

The record reveals that a fast food restaurant was robbed one evening. Two men drove to the drive-thru window and demanded money at gunpoint. A cashier and the restaurant's manager complied with the perpetrators' demands, but were able to provide police with a description of the vehicle and its license plate number, a description of the gun, and a description of the perpetrators.

From the license plate number, police were able to obtain a make and model for the vehicle and the address of the owners, George and JoeAnn McAllister. Officer Michael Hanley testified that he drove by the house hourly until he saw the vehicle parked in the driveway. After that he kept the vehicle and the house under surveillance until a warrant could be obtained.

Sergeant Bobby Roberts testified that, at the same time that Hanley and his partner had the house and vehicle under surveillance, he prepared three photographic spreads for viewing by the two witnesses. From the photographic spreads, the witnesses tentatively identified the driver as Illan McDonalds, who records indicated also lived at the address of the house under surveillance. Based on this tentative identification and on the information about the license plate number and the vehicle, police obtained a search warrant for the house and the vehicle, and an arrest warrant for McDonalds.

Sergeant Roberts admitted that the photographic spread from which the witnesses identified McDonalds was inherently suggestive in that McDonalds's picture was lighter than all the others. In fact, it was later determined that McDonalds could not have been the driver of the vehicle because he was in jail on the night the restaurant was robbed.

■ McAllister contends that the identification of McDonalds was improper and implies that this improper identification tainted the search of the McAllisters' home. It is clear, however, that the police had probable cause to search the McAllisters' home, inasmuch as the search warrant was based on the identification of the vehicle. In any event, McAllister consented to the search of his home, and JoeAnn McAllister eventually led police to the gun. We find that McAllister's attorneys were not deficient for failing to request that the trial court suppress the gun, or for failing to request an instruction that would have allowed the jury to refuse to consider the gun as evidence if they found that it was the fruit of an illegal search.

We now turn to the identification of McAllister. Roberts testified that the three photographic spreads he prepared were based on the witnesses' descriptions of the driver of the vehicle and did not contain pictures of McAllister. However, Officer Kevin Morgan testified that McAllister volunteered to participate in a live lineup, which Morgan videotaped for later viewing by the witnesses. About a month later, both witnesses identified McAllister from the videotape as the passenger in the vehicle. The witnesses later identified McAllister in court.

■ A pretrial identification procedure may be so unnecessarily suggestive and conducive to mistaken identification that to use that identification at trial would deny the accused due process of law. *Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim.App.1988) (citing *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d

1199 (1967)). An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex.Crim.App.1999). Nevertheless, if the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed reliable. "[R]eliability is the linchpin in determining the admissibility of identification testimony...." *Manson v. Brathwaite*, 432 U.S. 98, 113–14, 97 S.Ct. 2243, 53 L.Ed.2d 140, 153–54 (1977); *Webb*, 760 S.W.2d at 269.

■■■ The defendant must prove (1) that the pretrial identification was impermissibly suggestive and (2) that, under the circumstances, the impermissibly suggestive identification created a substantial likelihood of misidentification. *Webb*, 760 S.W.2d at 269. To determine the latter, courts should consider as nonexclusive factors: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. *Manson*, 432 U.S. at 114, 97 S.Ct. 2243; *Webb*, 760 S.W.2d at 269.

McAllister contends that the videotape lineup was overly suggestive and that his attorneys were deficient in not seeking its suppression or an instruction that would have allowed the jury to refuse to consider it and the witnesses' subsequent in-court identifications as evidence. However, even assuming that McAllister's attorneys could have shown that the videotape lineup was impermissibly suggestive, the totality of circumstances surrounding the identifications would not have led to its suppression.

The witnesses both testified that the passenger was the gunman and that he pointed the gun at them while facing them across the roof of the car. They testified that they were less than three feet away from the passenger and that there was adequate lighting. They each separately gave police a description of the passenger that matched the other's description. From those descriptions, police at McAllisters' house were immediately able to identify George McAllister as the suspected passenger. Finally, the witnesses were shown the videotape a month after the crime, and both unhesitatingly identified McAllister as the passenger.

■■■ Therefore, McAllister's attorneys were not deficient for failing to seek suppression of the pretrial identification. They could have reasonably chosen to highlight differences between the participants in the lineup and inconsistencies in the witnesses' testimony as part of their trial strategy. For example, McAllister's attorneys cross-examined Morgan at length about the videotape's perceived suggestiveness. They also questioned one of the witnesses about her failure to identify McAllister before the grand jury.

■■■ If the videotape itself demonstrated such clear and obvious disparities between McAllister and the other lineup participants (e.g., lineup participants of a different race than the defendant) such that McAllister's rights were clearly prejudiced, this might support an ineffective assistance of counsel claim in and of itself. We have reviewed the videotape as part of the appellate record and conclude that no such disparities exist. The lineup participants are all roughly the same height and weight, and are of the same race. They appear to be about the same age and have varying degrees of facial hair. The videotape in and of itself presents no indication that McAllister's trial attorneys were deficient for failing to seek its suppression.

■■■ McAllister also contends that his attorneys were deficient for failing to request that the jury be instructed to disregard the identification if it found it to be impermissibly suggestive. However, such an instruction is not permitted under Texas law.

■ One reason such instructions are not permitted is that determining whether a lineup is impermissibly suggestive does not involve a purely factual question. Under TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2000),[1] jury instructions are required when (1) the evidence before the jury raises a contested issue, and (2) the issue is one of fact. *Murphy v. State,* 640 S.W.2d 297, 299 (Tex.Crim.App.1982). But, for example, a defendant has no right to have the jury consider whether an arrest was illegal because of a variance between the name printed on the warrant and his name, because it is not an issue of fact, but a question of law. *See Archer v. State,* 607 S.W.2d 539, 543 (Tex.Crim.App. [Panel Op.] 1980), *overruled on other grounds, Wilson v. State,* 977 S.W.2d 379, 380 (Tex.Crim.App.1998).

In contrast, the defendant was entitled to have the jury resolve a factual dispute concerning whether an informant told police that the defendant was carrying a weapon, when police used that information to establish probable cause to arrest. *Jordan v. State,* 562 S.W.2d 472 (Tex.Crim. App. [Panel Op.] 1978). A defendant's own testimony that he was not speeding entitled him to an instruction allowing the jury to disregard evidence of his intoxication that was produced after the police stopped him for speeding. *Reynolds v. State,* 848 S.W.2d 148, 149 (Tex.Crim.App. 1993).

In *Allen v. State,* 511 S.W.2d 53, 54 (Tex.Crim.App.1974), the Texas Court of Criminal Appeals held that Article 38.23 does not apply to in-court identifications, but to illegally obtained evidence. In *Andujo v. State,* 755 S.W.2d 138 (Tex.Crim. App.1988), the court cited *Allen* in upholding the trial court's rejection of the defendant's requested instruction that would have charged the jury to disregard the in-court identification if it resulted from an unfair or suggestive identification procedure. The court criticized the requested charge as failing to suggest a standard of fairness or suggestiveness. *Id.* at 143.

In *Withers v. State,* 902 S.W.2d 122, 124 (Tex.App.Houston [1st Dist.] 1995, pet. ref'd), however, the defendant also argued that the trial court should have submitted a jury instruction that the lineup identification was impermissibly suggestive. The court of appeals held that the defendant had not raised a factual dispute concerning how the evidence was obtained, such as disputing the physical characteristics of the other lineup participants or how the lineup was conducted. *Id.* at 125.

■ We disagree with *Withers* to the extent it suggests that, by disputing the physical characteristics of the other lineup participants, a defendant is entitled to a jury instruction allowing it to disregard the identification as impermissibly suggestive. Whether a trial court errs in admitting into evidence a witness's identification involves a mixed question of law and fact. *Loserth v. State,* 963 S.W.2d 770, 772–73 (Tex.Crim.App.1998); *Benitez v. State,* 5 S.W.3d 915, 921 (Tex.App.Amarillo 1999, pet. ref'd). Such questions are reviewed *de novo* when they do not turn on the credibility and demeanor of witnesses. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim.App.1997).

■ In the present case, whether the relative physical characteristics of lineup participants makes the lineup impermissibly suggestive is not a question of fact for

1. TEX CODE CRIM. PROC. ANN. art. 38.23 (Vernon Supp.2000) states in part:
    (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

    In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

the jury to decide. Rather, it is a threshold determination that the court must make before considering whether, under the totality of the circumstances, the identification was reliable. Such questions are for the trial court and not for the jury. *Martinez v. State,* 437 S.W.2d 842, 848 (Tex.Crim.App.1969).

Another reason such an instruction is suspect is that it could operate as an improper comment on the evidence. In *Waller v. State,* 581 S.W.2d 483, 484 (Tex. Crim.App. [Panel Op.] 1979), the court upheld the trial court's refusal to submit the defendant's requested instruction on misidentification. The court held that, even if the evidence had raised such an issue, it would have been error for the trial court to single out facts concerning the witness's identification of the defendant and to magnify them before the jury. *Id.*

Similarly, in *Bath v. State,* 951 S.W.2d 11, 24 (Tex.App.Corpus Christi 1997, writ ref'd), *cert. denied,* 525 U.S. 829, 119 S.Ct. 80, 142 L.Ed.2d 62 (1998), the court upheld a trial court's refusal to submit the defendant's requested charge, which would have inquired whether the jury was convinced that a witness had an adequate opportunity to observe the person who committed the crime and noted the variables impacting "adequate opportunity." The court in that case held that such a charge would direct attention to specific parts of the testimony and would constitute an improper comment on the evidence. *Id.* In addition, the court held that the defendant's rights were adequately protected by the trial court's instruction that the jury must find the defendant guilty of each element of the offense beyond a reasonable doubt. *Id.* at 24–25.

In summary, McAllister highlights perceived physical differences between the lineup's participants and contends that his attorneys were deficient in failing to request a jury instruction. We hold that McAllister's attorneys were not deficient for failing to request a jury instruction because such an instruction would not have been available under Texas law and would have been an impermissible comment on the evidence.

The trial court's judgment is affirmed.