**Affirmed and Memorandum Opinion filed November 7, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00102-CR

**SEDRICK DOMONIQUE HAYWOOD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1258266**

## M E M O R A N D U M   O P I N I O N

Appellant Sedrick Domonique Haywood was convicted of aggravated robbery and sentenced to 45 years' confinement in prison. See Tex. Penal Code Ann. § 29.03 (West 2011). Appellant now appeals his conviction in four issues. In his first issue, appellant contends his conviction should be reversed because the trial court allowed voir dire to continue when he was not present in the courtroom. We conclude this is a statutory violation and is harmless. In his second issue,

appellant argues the trial court erred when it admitted the complainant's in-court identification of appellant because he contends it was tainted by an impermissibly suggestive pre-trial show-up identification. Appellant did not preserve this issue for our review. In his third issue, appellant contends the evidence is legally insufficient to support his conviction. We disagree because the complainant's identification, the surveillance video from the crime scene, and other evidence tie appellant to the crime. Finally, in his fourth issue, appellant argues he received ineffective assistance of counsel. As to each complaint, however, appellant failed to show one of the required elements of an ineffective assistance claim. We therefore affirm the trial court's judgment.

## BACKGROUND

On April 7, 2010, Laura Martinez was working alone behind the counter at the EZ Loan on Wirt Road. At about 1:30 that afternoon, Martinez observed appellant walk into her store and pull a mask over the top half of his face. Seeing appellant's action, Martinez hit the panic button hanging around her neck. Appellant quickly leaped over the counter, pointed a gun at Martinez's face, and told her to give him the money. Martinez opened the till with her key and put the money from the till in appellant's black bag. Martinez then entered the code to open the store's safe, but the lock was a timed lock and would not open for twelve minutes.

As time passed, appellant grew increasingly impatient and repeatedly told Martinez she was taking too long getting the money and to hurry up. Appellant also told Martinez there were police everywhere and if they came, he was going to kill her. Martinez began to pray and beg for her life, however appellant told her he was going to kill her whether he got the money or not because she had seen his face. Appellant then demanded Martinez's driver's license and told her that if he

2

got caught, he was going to kill her and her family. After appellant noticed the EZ Loan's surveillance camera, he walked over to check if the door to the EZ Loan was locked and he threatened Martinez that if the door was locked, he was going to kill her. When he checked the door, appellant saw a marked police car pull up to the EZ Pawn next door. At that point, appellant ran out of the EZ Loan without any of the money.

Martinez estimated that appellant was in the store for nine minutes. Martinez testified that she saw appellant's face before he pulled the mask down. Martinez also testified that she could see through the mask even after appellant had pulled it down over part of his face because the material was thin.

The State played the surveillance video from the EZ Loan during Martinez's testimony. The video shows appellant wearing a white muscle shirt, black basketball shorts, a sheer black mask covering part of his head, white high top shoes, and a black baseball hat.

Responding to a report of an aggravated robbery, Officer Williams of the Houston Police Department saw appellant running along the front of the Fiesta supermarket adjacent to the EZ Loan. According to Williams, he saw appellant running away from a small carrousel and food vending area. Williams testified that appellant was being boxed in by police and he looked desperate. Williams pulled his patrol car in front of appellant, blocking his path. Williams then chased appellant on foot into and then out of the Fiesta before tackling him in the parking lot.

Officer Negron traced the route appellant had run looking for evidence. Negron recovered appellant's black beanie and black White Sox hat near the Fiesta shopping carts and his .45 caliber handgun from under the children's carrousel. Negron testified that the handgun was loaded with a bullet in the chamber so that

all appellant "needed to do was squeeze the trigger."

Officer Golemon was working as part of a Houston Police Department tactical unit patrolling near the EZ Loan. Goleman heard a holdup alarm go out over the police radio and decided to respond because the EZ Loan was fairly close. When Golemon arrived on the scene appellant was already in custody, so he went directly to the EZ Loan.

The EZ Loan was unoccupied when he arrived but Golemon found a visibly upset Martinez at the EZ Pawn next door. Golemon then took Martinez back to the EZ Loan so she could describe what had happened. Once they entered the EZ Loan, Golemon found a black bag on the floor still containing the cash from the till.

Golemon asked Martinez to accompany him to see if she could identify the person already in custody. Golemon then drove Martinez to the location where appellant was being held in custody, which was behind the Fiesta. Golemon then asked Martinez if "the person that was standing outside the patrol car was the person who did this." Martinez then identified appellant as that person. According to Golemon, at the time Martinez identified appellant as the suspect, appellant was the only person at the scene in handcuffs and there were police officers standing near him.

During appellant's trial, Martinez testified about her identification of appellant on the day of the robbery. According to Martinez, she identified appellant as the suspect between twenty and thirty minutes after the aggravated robbery occurred. When Golemon drove Martinez to the back of the Fiesta, he asked if she recognized him as the person who robbed the EZ Loan. Martinez testified that she was shown a single person and that she knew "it was him as soon as they pulled up." During her testimony, Martinez denied that the police

4

suggested appellant was the person who had robbed the EZ Loan. Instead, Martinez testified that her identification of appellant was based on what he was wearing and the fact she had seen his entire face prior to the point when he pulled the mask over half of his face. Martinez also identified appellant in court as the person who robbed her, stating that she was a hundred percent sure of her identification.

The following day, appellant gave a statement to Sergeant Robert Wilkinson of the Houston Police Department. The entire interview was videotaped. The video was then played during appellant's trial over appellant's objection. Prior to the start of the actual interview, Wilkinson gave appellant the required statutory warnings. According to Wilkinson, appellant acknowledged the warnings, but he did not recall appellant expressly waiving his rights. In his statement, appellant wore the same clothing he was seen wearing in the EZ Loan surveillance video and admitted that the gun found under the carrousel at the Fiesta was his. Appellant also claimed that he was too intoxicated to remember what had happened the day before. Appellant went on to state that was he sorry for what he had done and apologized to the lady in the EZ Loan.

The jury found appellant guilty of aggravated robbery, and the trial court sentenced him to 45 years' confinement in prison. This appeal followed.

## ANALYSIS

As mentioned above, appellant brings four issues on appeal. Because appellant's third issue challenges the sufficiency of the evidence supporting his conviction, we address it first.

## I. The evidence is legally sufficient to support appellant's aggravated robbery conviction.

In his third issue, appellant contends the evidence is legally insufficient to

5

support his conviction. Specifically, appellant complains that the evidence is insufficient to establish his identity as the perpetrator of the aggravated robbery of the EZ Loan. We disagree.

## A. Standard of review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether a rational jury could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). In making this review, an appellate court considers all evidence in the record, whether it was admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citing *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

We may not substitute our judgment for that of the jury by reevaluating the weight and credibility of the evidence. *Romero v. State*, 406 S.W.3d 695, 697 (Tex. App.—Houston [14th Dist.] 2013, pet. struck). We defer to the jury's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. *Id.* The jury alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. *Id.* Therefore, the testimony of a single eyewitness can be enough to support a conviction. *Id.* (citing *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971)). In addition, because it is the sole judge of the weight and credibility of the evidence, the jury may find guilt without physical evidence linking the accused to the crime. *Id.* In conducting a sufficiency review, we do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Young v. State*, 358 S.W.3d 790, 801 (Tex. App.—Houston [14th Dist.]

6

2012, pet. ref'd).

**B.    The evidence supporting appellant's conviction**

A person commits aggravated robbery if he commits robbery and he uses or exhibits a deadly weapon. Tex. Penal Code Ann. § 29.03(a)(2). A person commits robbery if, in the course of committing theft with the intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* at § 29.02(a)(2) (West 2011). A firearm is a deadly weapon. *Id.* at § 1.07(a)(17) (West 2011). The State must prove beyond a reasonable doubt that the defendant is the person who committed the charged offense. *Bradley v. State*, 359 S.W.3d 912, 916 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

In his third issue, appellant challenges only the sufficiency of the evidence establishing his identity as the person who robbed the EZ Loan. In arguing that the evidence is legally insufficient, appellant urges this Court not to consider his video statement to Sergeant Wilkinson in evaluating the sufficiency of the evidence. In addition, appellant argues the evidence is insufficient because (1) he was arrested wearing black basketball shorts but Martinez testified the person who robbed the EZ Loan was wearing white basketball shorts; (2) there was no physical evidence connecting him to the EZ Loan or the handgun found under the Fiesta carousel; and (3) appellant has significant tattooing on his face and Martinez, during her trial testimony, did not recall that the suspect had any tattoos or coloring on his face.

Initially, we disagree with appellant's argument that we should not consider in our sufficiency evaluation the video statement in which appellant wore the same clothes as the suspect in the surveillance video, claimed ownership of the handgun

7

found at the Fiesta, and apologized for what he had done.[1]  When evaluating the sufficiency of the evidence, we examine all of the evidence, whether it was properly admitted into evidence or not.  *Winfrey*, 393 S.W.3d at 767.  Yet even if the video statement could be excluded from the sufficiency analysis, we conclude there is legally sufficient evidence supporting the jury's verdict.

Martinez, the only eyewitness to the aggravated robbery, made an in-court identification of appellant as the person who entered the EZ Loan, pulled a mask over part of his face, leaped over the counter, demanded that she give him money, and repeatedly threatened her life while pointing a handgun at her.  The jury heard Martinez's testimony that the suspect was wearing white basketball shorts, and that she did not recall the suspect having any tattoos or coloring on his face.  But the jury was also shown the surveillance video from the EZ Loan, which depicted the suspect wearing black basketball shorts.  The jury also had an opportunity to compare for itself the appearance of the suspect in the video with the appearance of appellant sitting in the courtroom.

In addition, the jury was made aware of the lack of fingerprints on the handgun found under the Fiesta carousel and the undisputed fact that appellant did not have on his person any physical evidence from the EZ Loan when he was

---

[1] To the extent appellant's third issue could be construed as challenging the trial court's admission of his video statement over his objection that he had not expressly waived his rights as required by article 38.22 of the Texas Code of Criminal Procedure, we conclude such a challenge fails.  There is no requirement that a defendant expressly waive his rights under Article 38.22 of the Texas Code of Criminal Procedure.  *Turner v. State*, 252 S.W.3d 571, 583–84 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd).  Instead, an implied waiver is sufficient.  *See id.*  Here, as the video admitted during his trial demonstrates, appellant was informed of his rights, acknowledged he understood them, and then proceeded to answer Sergeant Wilkinson's questions.  We conclude appellant validly waived his rights under article 38.22.  *See id.* ("In the present case, [the police] properly advised appellant of his rights on videotape and asked appellant if he understood his rights.  Appellant indicated he did understand and then proceeded to answer [the officer's] questions.  Thus, based on the totality of the circumstances, we hold appellant validly waived his rights under article 38.22.").

arrested. But the jury also heard testimony about items seen in the surveillance video that Officer Negron found discarded along what would have been the suspect's flight path if he had run from the EZ Loan to the Fiesta. Finally, the jury heard Officer Williams's testimony that he observed appellant running in front of the Fiesta, stopped his patrol car in front of appellant, and chased appellant while repeatedly ordering him to halt; appellant continued running and finally had to be tackled in the parking lot.

The jury heard all of this evidence, including the evidence emphasized by appellant, and still found appellant guilty of aggravated robbery. We conclude that the evidence, when viewed in the light most favorable to the verdict, was sufficient for a reasonable jury to reach that verdict. *See Bradley*, 359 S.W.3d at 917 (holding the complainant's testimony covering all elements of charged offense was legally sufficient to support conviction for aggravated robbery); *see also Delacruz v. State*, 278 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) ("[A]ppellant's flight from [the police] from near the scene of the offense serves as additional circumstantial evidence of his guilt."). We overrule appellant's third issue.

## II. Appellant was not harmed by the trial court's decision to proceed with voir dire after appellant voluntarily absented himself from the courtroom.

In his first issue, appellant contends the trial court erred when it conducted part of the voir dire process after he voluntarily absented himself from the courtroom. According to appellant, this action by the trial court violated his right to be present during trial under the federal and state constitutions as well as his statutory right to be present during trial under article 33.03 of the Texas Code of

9

Criminal Procedure.[2]

## A. Facts relevant to appellant's first issue

On January 27, 2012, the trial court began voir dire in appellant's trial. Appellant was present in the courtroom throughout the morning session. Once the trial court had completed its portion of the voir dire, it sent the venire panel to lunch. During the lunch break, the bailiff advised the trial court that appellant refused to leave his cell to conclude voir dire. The trial court found appellant had voluntarily absented himself and continued with the voir dire and jury selection. The record is silent regarding whether appellant's defense counsel communicated with appellant regarding his unwillingness to leave his cell, but defense counsel did not object to completing voir dire and jury selection in appellant's absence.

After one of the venire members asked what had happened to appellant, the trial court explained that the law allows a criminal defendant to voluntarily absent himself from the trial proceedings under certain circumstances and that appellant chose to do that following the lunch recess. Defense counsel then questioned the venire members on whether they would hold appellant's absence against him. The State agreed to strike the venire members who stated that appellant's voluntary absence from the courtroom was a circumstance they would hold against him.

The next trial day, after appellant was arraigned, the trial judge asked appellant if he intended to attend and participate in his trial and he responded that he did. Before the jury was sworn, appellant's defense attorney raised an objection under Article 33.03 of the Texas Code of Criminal Procedure, asking the trial court to not swear in the jury and to instead select a new jury. The trial court overruled

---

[2] Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *Vasquez v. State*, 324 S.W.3d 912, 918 n.4 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

appellant's objection as untimely. The record establishes that appellant was present for the remainder of his trial.

> **B. The trial court's decision to continue with the voir dire after appellant voluntarily absented himself from the courtroom did not violate appellant's constitutional right to be present during all phases of his trial.**

Under the Sixth Amendment to the United States Constitution, a criminal defendant threatened with the loss of liberty must be physically present during all phases of the proceedings against him. *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985) (citing *Lewis v. United States*, 146 U.S. 370 (1892)). The right to be present can be waived if the criminal defendant voluntarily absents himself after the commencement of the trial proceedings. *Id.* (citing *Taylor v. United States*, 414 U.S. 17 (1973)); *Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.— Dallas 2000, pet. ref'd). A trial commences at the time the work of impaneling jurors begins. *Miller*, 692 S.W.2d at 91. Therefore, once voir dire begins in his presence, a criminal defendant may voluntarily absent himself from the proceedings without a violation of the Sixth Amendment right to be present during all phases of the trial. *Id.*; *Tracy*, 14 S.W.3d at 826.

In this case, appellant was present at the commencement of voir dire and throughout the trial court's questioning of the venire. The record establishes the trial court recessed the proceedings for lunch once it had completed its portion of the voir dire. The record further establishes that appellant voluntarily chose to not return to the courtroom for the completion of the voir dire process following the lunch recess. Because appellant was physically present when the trial commenced, his Sixth Amendment right to be present was not violated as a result of the trial court's decision to continue with voir dire following his voluntary absence. *Tracy*, 14 S.W.3d at 826.

11

**C. Appellant was not harmed by the violation of his statutory right to be present under article 33.03 of the Texas Code of Criminal Procedure.**

Article 33.03 requires a defendant in a felony prosecution to be personally present at trial. Tex. Code Crim. Proc. Ann. art. 33.03 (West 2006). A defendant's statutory right to be present cannot be waived until after the jury is selected. *Miller*, 692 S.W.2d at 91; *see also Tracy*, 14 S.W.3d at 826. For purposes of article 33.03, the jury is selected when the parties have handed in their respective jury lists with their peremptory challenges marked. *Miller*, 692 S.W.2d at 93. Because appellant absented himself from the trial prior to that point, his statutory right to be present was violated when the trial court continued with voir dire in his absence. *Tracy*, 14 S.W.3d at 826.

We turn next to the required harm analysis. *See Johnson v. State*, 169 S.W.3d 223, 229, n.15 (Tex. Crim. App. 2005) ("In appellate parlance, trial court mistakes are referred to as 'errors,' . . . which may be reversible, depending on the applicable harm analysis (if any)."). Because a violation of article 33.03 is a statutory error, we may not reverse unless the error affected a substantial right.[3]

---

[3] Although appellant concedes he was present for the beginning of the voir dire process and voluntarily absented himself from the rest, he argues we should apply the harm analysis for constitutional error found in Tex. R. App. P. 44.2(a). He cites two cases for that proposition: *Sumrell v. State*, 326 S.W.3d 621 (Tex. App.—Dallas 2009), *pet. dism'd, improvidently granted*, 320 S.W.3d 338 (Tex. Crim. App. 2010) (per curiam), and *Bledsoe v. State*, 936 S.W.2d 350 (Tex. App.—El Paso 1996, no pet.). We conclude these cases do not control the outcome here because they are distinguishable.

In *Sumrell*, unlike the present case, the record was silent regarding whether the defendant's absence during voir dire was voluntary. As a result, the court determined the defendant's constitutional right to be present during all phases of his trial was violated, and it applied the harm analysis for constitutional error found in Rule 44.2(a). *See Sumrell*, 326 S.W.3d at 624 ("We will not presume on the record before us that appellant's absence was voluntary."). As addressed above, the record here establishes that appellant's choice not to participate in the full voir dire process was voluntary, making this a statutory violation, not a constitutional error.

Tex. R. App. P. 44.2(b); *Tracy*, 14 S.W.3d at 827. A substantial right is affected when the error (1) had a "substantial and injurious" effect or influence in determining the jury's verdict, or (2) leaves one in grave doubt whether it had such an effect. *Tracy*, 14 S.W.3d at 827. A substantial right is not affected and the error is harmless if, after reviewing the entire record, the appellate court determines the error did not influence, or had only a slight influence, on the trial's outcome. *Id.*

No violation of a substantial right occurs during voir dire unless the record shows the defendant was denied a fair and impartial jury. *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 562 (Tex. Crim. App. 1999)). Here, the record reflects that appellant's defense counsel conducted a thorough voir dire, discussed appellant's absence, and the trial court struck those venire members who stated that appellant's voluntary absence from the courtroom was a circumstance they would hold against him. We conclude that the record shows that the jury picked during appellant's absence was fair and impartial, and appellant has not demonstrated otherwise. We overrule appellant's first issue.

## III. Appellant did not preserve his identification issue for appellate review.

In his second issue on appeal, appellant contends that the trial court erred when it admitted Martinez's in-court identification of appellant because he

---

The *Bledsoe* case is distinguishable because the court applied the harm analysis found in former Rule 81(b)(2) of the Rules of Appellate Procedure. *See Bledsoe*, 936 S.W.2d at 351. Under that rule, all errors were subject to reversal unless found harmless "beyond a reasonable doubt." The current rule, however, distinguishes between constitutional and non-constitutional errors, with the latter being governed by the more lenient "substantial rights" analysis found in Rule 44.2(b). *See Taylor v. State*, 109 S.W.3d 443, 451 (Tex. Crim. App. 2003). When faced with a case presenting non-constitutional error under the current rule, an appellate court applies the Rule 44.2(b) harm analysis, not the harm analysis found in Rule 44.2(a) or former Rule 81(b)(2). *See VanNortrick v. State*, 227 S.W.3d 706, 709–10 (Tex. Crim. App. 2007); *Aguirre-Mata v. State*, 992 S.W.2d 495, 498 (Tex. Crim. App. 1999).

contends it was the product of an impermissibly suggestive one man show-up identification at the scene of the aggravated robbery. Appellant did not object to Martinez's in-court identification, however.

To preserve error for appellate review, a party must (1) make a timely objection, (2) state the basis for the objection, and (3) obtain a ruling from the trial court. Tex. R. App. P. 33.1; *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). Even constitutional errors may be waived by a failure to object at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Appellant does not cite anywhere in the record where he lodged an objection to Martinez's in-court identification of appellant as the person who robbed the EZ Loan, and our own independent search of the record has revealed no such objection. Because appellant failed to object, he has not preserved this issue for appellate review. Tex. R. App. P. 33.1; *Ballah v. State*, No. 14-10-00460-CR, 2012 WL 19653, at *2 (Tex. App.—Houston [14th Dist.] Jan. 5, 2012, pet. ref'd) (mem. op.) (citing *Perry v. State*, 703 S.W.2d 668, 670, 673 (Tex. Crim. App. 1986)); *see also Wright v. State*, 374 S.W.3d 564, 575–76 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). We overrule appellant's second issue.

## IV. Appellant is not entitled to a new trial based on ineffective assistance of counsel.

In his fourth issue on appeal, appellant contends he was denied effective assistance of counsel because his trial counsel (1) failed to communicate with him, (2) failed to investigate, (3) failed to object timely to appellant's absence during voir dire, (4) failed to object to hearsay, (5) failed to object to cumulative testimony, (6) failed to object to the State's use of leading questions while examining Martinez, (7) assisted Martinez during trial counsel's own cross-examination of her, (8) failed to file pre-trial motions to suppress appellant's video

14

statement and Martinez's identification of appellant, (9) failed to point to conflicts in the evidence and the lack of forensic evidence connecting appellant to the crime during closing argument, and (10) failed to identify specific grounds in his motion for directed verdict.

## A. Standard of review

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish ineffective assistance of counsel, an appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.*

An accused is entitled to reasonably effective assistance of counsel. *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Bradley*, 359 S.W.3d at 916. Reasonably effective assistance of counsel does not mean error-free representation, however. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991). Isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Therefore, when evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of the case without the benefit of hindsight. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

There is a strong presumption that trial counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas*, 163 S.W.3d at 740. It is not sufficient that an appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. *Lopez*, 343 S.W.3d at 143. Instead, in order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record and the court must not engage in retrospective speculation. *Id.* at 142. When such direct evidence is not available, we will assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Id.* at 143.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When no reasonable trial strategy could justify trial counsel's conduct, however, trial counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005).

The Court of Criminal Appeals recently stated that it is a rare case in which trial counsel's ineffectiveness is apparent from the record, allowing an appellate court to address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. The court declared that it is a "difficult hurdle to overcome: the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify

16

trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Id.* In other words, when trial counsel has not had an opportunity to explain his or her actions or inactions, an appellate court cannot find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

If a criminal defendant can prove trial counsel's performance was deficient, he must also prove he was prejudiced by his trial counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Malett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be taken." *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012).

**B.      As to each of appellant's complaints about counsel, he failed to establish one of the elements required to obtain a new trial.**

Appellant contends his trial counsel was ineffective for ten reasons, which we consolidate into eight. Appellant did not file a motion for new trial. As a result, appellant's trial counsel was not afforded the opportunity to explain his decisions or trial strategy relating to each of appellant's allegations. Accordingly, the record is silent as to the reasons for trial counsel's challenged conduct.

*1.      Appellant did not establish that he was prejudiced as a result of his trial counsel's alleged failure to communicate.*

Appellant contends his trial counsel was ineffective because he allegedly failed to communicate with appellant. More specifically, appellant contends his trial counsel did not accept his proposed defense of misidentification. Even if we

17

assumed trial counsel's communication with appellant was deficient, we conclude he has not established prejudice because the record establishes that appellant's defense of misidentification was presented at trial and he was still found guilty. Appellant has not established that the result of the trial would have been different had his trial counsel communicated with him more effectively on this issue. *See Ladd v. State*, 3 S.W.3d 547, 570 (Tex. Crim. App. 1999) (failure to establish the prejudice prong of *Strickland* test precludes any relief).

### 2. *Appellant did not establish that his trial counsel failed to investigate his case.*

Appellant next contends his trial counsel was ineffective because he did not arrange for appellant to view the EZ Loan surveillance video until June 24, 2011—the same day appellant was required to decide whether the trial court or the jury would assess his punishment in the event he was found guilty. But this date was approximately six months before trial, and appellant does not explain how the fact that it was the same day he was required to make a decision on punishment establishes a failure to investigate or somehow renders his trial counsel's performance deficient. *See Perez v. State*, No. 14-07-00414-CR, 2008 WL 5220302, at *4 (Tex. App.—Houston [14th Dist.] Dec. 11, 2008) ("A bre[a]ch of the duty to investigate may result in a finding of ineffective assistance where the result is that any viable defense available to the accused is not advanced."), *aff'd* 310 S.W.3d 890 (Tex. Crim. App. 2010). We conclude appellant has failed to overcome the strong presumption of reasonable professional assistance with respect to his counsel's efforts to investigate. *See Salinas*, 163 S.W.3d at 740.

18

### 3. Appellant was not prejudiced as a result of the timing of trial counsel's objection to his absence during voir dire.

Appellant also contends his trial counsel was ineffective because he did not timely object to appellant's absence from part of voir dire in violation of article 33.03 of the Code of Criminal Procedure. Assuming trial counsel's performance was deficient when he did not object at the time that appellant voluntarily absented himself from the proceedings, but instead objected the next day prior to the jury being sworn, we conclude appellant has not established that he was prejudiced by this deficient conduct. Because a defendant's statutory right to be present during trial cannot be waived until after the jury is selected, counsel's failure to object promptly did not impact his ability to raise that issue on appeal. *Miller*, 692 S.W.2d at 91; *see also Tracy*, 14 S.W.3d at 826. Indeed, appellant raised the issue in this appeal, and we addressed it on the merits and determined he was not harmed as a result of the violation of article 33.03. Therefore, appellant has not established by a preponderance of the evidence that he was prejudiced as a result of his trial counsel's belated objection.

### 4. Appellant did not establish that his trial counsel performed deficiently by failing to make certain evidentiary objections.

Appellant next complains that his trial counsel was ineffective because he failed to make certain evidentiary objections. Appellant first contends his trial counsel was ineffective because he failed to object to Officer Negron's testimony regarding how he came to backtrack through the path appellant traveled after leaving the EZ Loan. According to appellant, this testimony was inadmissible hearsay. We disagree. *See Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005) ("[T]estimony by an officer that he went to a certain place or performed a certain act in response to generalized 'information received' is normally not considered hearsay because the witness should be allowed to give

19

some explanation of his behavior."). An attorney's failure to object to admissible testimony does not constitute ineffective assistance of counsel. *See Bradley*, 359 S.W.3d at 919 ("Counsel is not ineffective for failing to raise an objection that lacks merit.").

Next, appellant contends his trial counsel was ineffective for failing to object to Officer Negron's allegedly hearsay testimony regarding the actions of two other police officers who transported the items he found outside the Fiesta to the police property room. In addition, he contends his trial counsel was ineffective for failing to object to Negron's testimony regarding the purpose of hollow point bullets. According to appellant, this testimony was cumulative of another police officer's trial testimony. Finally, appellant asserts his trial counsel was ineffective because he did not object to the State's use of leading questions during its direct examination of Martinez.

Assuming without deciding that the challenged testimony was inadmissible, we conclude appellant has not established that his trial counsel's decision not to object was so outrageous that no competent attorney would have engaged in it. An attorney is not necessarily ineffective for failing to object to inadmissible evidence. *McCook v. State*, 402 S.W.3d 47, 52 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Because jurors often view lawyers who make numerous objections as trying to conceal the real truth from them, appellant's trial counsel could have made the strategic decision not to object to the challenged testimony because he did not believe it would impact his misidentification defensive strategy, or because he believed the evidence would have come in anyway. *See McKinney v. State*, 76 S.W.3d 463, 473 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (stating that an attorney may decide to not object to inadmissible evidence for strategic reasons); *Young v. State*, 10 S.W.3d 705, 713 (Tex. App.—Texarkana 1999, pet. ref'd)

(stating that it can be sound trial strategy for trial counsel to not object to leading questions when the evidence will likely come in anyway); *Henderson v. State*, 704 S.W2d 536, 538 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) ("Failing to object to every introduction of improper evidence or questioning does not indicate that appellant's representation was ineffective. Not objecting can be a trial strategy."). Therefore, on this record, we conclude appellant did not establish that his trial counsel performed deficiently by failing to object to the challenged testimony.

> **5.** ***Appellant's trial counsel did not assist Martinez in testifying against appellant during cross-examination.***

Appellant next asserts his trial counsel was ineffective when he allegedly assisted Martinez in testifying against appellant during counsel's cross-examination. The challenged cross-examination proceeded as follows:

[Q.]   This particular individual who pointed that gun at you on April 7, 2010, had you seen him before that date?

A.   No.

Q.   Okay. So how much time would you estimate the two of you were in the store together?

A.   At least, you know, eight to nine minutes.

Q.   Eight to nine minutes. So except for that mega-second, if you will, that he was putting that mask on, they took ten minutes, he was in your presence, at least part of his face was always covered; is that correct?

A.   Part of it.

Q.   Okay. And when you initially – the first time you talked to the police, did you ever tell them that this person had any distinctive marks about his facial area that you could see uncovered?

A.   Not that I remember, no.

Q.   Okay. Did you recall seeing any coloring or tattooing or anything in the person's face or about the area that was not covered by

21

the mask?

A. Not that I remember, no.

Q. Okay. And if you did — I realize for obvious reasons you were upset — that's something that you probably would have told the police; is that right?

A. I would think so, if they asked that question.

Appellant, who had substantial tattooing on his face, contends the last question renders his trial counsel ineffective because he assisted Martinez in testifying against him. We disagree. Instead, when the entire line of questioning is examined, it is clear that appellant's trial counsel was asking Martinez questions designed to elicit testimony in support of appellant's misidentification defense: the amount of time Martinez and the armed robber were in the EZ Loan together; the fact that the armed robber's face was partially covered for the majority of that time; and the fact that Martinez did not recall seeing any marks or tattooing on the armed robber's face. We conclude that asking questions directly relevant to a trial strategy being followed, and gaining a concession from Martinez that she did not recall the robber having facial tattoos (which appellant clearly had), does not constitute ineffective assistance of counsel. *See Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (holding counsel's competence is presumed and appellant must rebut that presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound trial strategy).

To the extent appellant contends his trial counsel was ineffective because he conceded that she had legitimate reasons for being upset while she was in the presence of the armed robber, we disagree. Trial counsel's recognition that Martinez had been through a traumatic event when someone entered her place of business, pointed a gun at her, and then threatened her, did not harm appellant's

22

case or assist the State's.

**6. Appellant has not shown he was prejudiced as a result of trial counsel's failure to file a pre-trial motion to suppress appellant's video statement.**

Next, appellant contends his trial counsel was ineffective for not filing a pre-trial motion to suppress his video statement on the basis of appellant's alleged failure to waive his constitutional rights expressly. While it is true appellant's trial counsel did not file a motion to suppress appellant's video statement, he did object at trial based on the lack of an express waiver by appellant of his constitutional rights. The trial court overruled the objection, and therefore the issue was preserved for appellate review. As we explained above, no express waiver was required, and in any event the statement can be considered for purposes of a sufficiency analysis. *See ante* 7–8 and note 1. Appellant has not shown that the result of the proceeding would have been different if his trial counsel had filed a pre-trial motion to suppress rather than lodging the objection during trial. *See Wert*, 383 S.W.3d at 753 ("[T]o satisfy the *Strickland* test and prevail on an ineffective assistance of counsel claim on a motion to suppress, an appellant must show by a preponderance of the evidence that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction.").

**7. Appellant has not established that trial counsel performed deficiently by failing to move to suppress Martinez's show-up and in-court identifications of appellant.**

"An in-court identification is inadmissible when it has been tainted by an impermissibly suggestive pretrial photographic identification." *McAllister v. State*, 28 S.W.3d 72, 77 (Tex. App.—Texarkana 2000, no pet.) (citing *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999)). Appellant contends his trial counsel

was ineffective for not filing a motion to suppress Martinez's in-court identification of appellant because it was tainted by an impermissibly suggestive show-up identification of appellant. A trial counsel's failure to file a motion to suppress, however, is not per se ineffective assistance of counsel. *Wert*, 383 S.W.3d at 753. We conclude appellant has not established that his trial counsel's failure to file such a motion was not part of a reasonable trial strategy; thus, he has not established the first *Strickland* prong. *See McCook*, 402 S.W.3d at 52 (concluding appellant did not establish trial attorney's conduct was deficient because decision to not object to inadmissible evidence could have been the result of the attorney's trial strategy).

It is possible that appellant's trial counsel reasonably decided that the in-court identification would be admitted even if he moved to suppress it or lodged a trial objection. *See Louis v. State*, 825 S.W.2d 752, 754, 756 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (concluding on-scene identification not impermissibly suggestive when confrontation occurred an hour after the offense, the witness immediately identified the defendant, and cross-examination could have exposed any possible prejudice resulting from the show-up identification). Based on that initial decision, appellant's trial counsel could then have reasonably decided that the best trial strategy was instead to expose any weaknesses in Martinez's identification of appellant, or any prejudices resulting from the single suspect identification procedure, through rigorous cross-examination. *See Johnson v. State*, 176 S.W.3d 74, 79 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (stating that simply because a trial strategy does not work does not mean that trial counsel was ineffective); *McAllister*, 28 S.W.3d at 77 ("[Trial counsel] could have reasonably chosen to highlight differences between the participants in the lineup and inconsistencies in the witnesses' testimony as part of their trial strategy."); *see*

24

*also Louis*, 825 S.W.2d at 756 ("[A]ny possible prejudice resulting from such a confrontation can be exposed through rigorous cross-examination of the witness."). On this record, we hold appellant has not established that his trial counsel's failure to file a motion to suppress Martinez's in-court identification amounted to deficient performance.

> **8.** ***Appellant waived his remaining contentions that trial counsel provided ineffective assistance because appellant has not adequately briefed the issue of prejudice.***

Appellant complains that his trial counsel's performance was deficient when he made a motion for directed verdict that did not set out the specific elements of the offense that were unsupported by evidence. Appellant also argues that his trial counsel's closing argument was deficient because it focused on the admissibility of appellant's video statement. According to appellant, trial counsel should also have addressed any conflicts in the evidence as well as the lack of physical evidence, such as fingerprints and DNA, connecting appellant to the crime.

To succeed on a claim of ineffective assistance of counsel, an appellant must establish not only that his counsel's performance was deficient, but also that he was prejudiced as a result of that deficient performance. *See My Thi Tieu v. State*, 299 S.W.3d 216, 225 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). In other words, appellant must establish by a preponderance of the evidence that but for his trial counsel's allegedly deficient motion for directed verdict and closing argument, the result of his trial would have been different. *Id.* In his brief, appellant did not provide any analysis of how the result of his trial would have been different. Because appellant inadequately briefed the required prejudice prong of these two contentions of ineffective assistance, he has waived them. Tex. R. App. P. 38.1(h).

Having addressed and rejected each of appellant's complaints of ineffective assistance of counsel, we overrule appellant's fourth issue.

## CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/    J. Brett Busby
       Justice

Panel consists of Justices Boyce, Jamison, and Busby.

Do Not Publish — TEX. R. APP. P. 47.2(b).

26